**Thomas R. BYERS, Appellant,**

v.

**Sandra OVITT, Appellee.**

**No. S–11605.**

Supreme Court of Alaska.

April 21, 2006.

Peter F. Mysing, Kenai, for Appellant.

Sandra L. Ovitt, pro se, Anchorage, Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

This case arises from a dispute about the amount of child support owed by Thomas Byers to Sandra Ovitt on behalf of their son, Kristerfer Byers. In December 2003 Ovitt moved for a modification of the court's initial child support order, claiming that purchases made by Byers showed that he had more income than he had disclosed to the court. After a series of hearings, a superior court master issued a recommended order increasing Byers's child support payments. With slight modifications, the order was adopted by the superior court.

Byers raises three issues on appeal. First, he argues that the superior court erred in failing to dismiss the motion and in permitting discovery when a material change in circumstances was not immediately evident. Second, he claims that the superior court should have scheduled a third evidentiary hearing sua sponte. Finally, he alleges that the superior court erred in its method of calculating his income. The superior court was acting well within its discretion when it allowed discovery on the motion to modify, accepted Byers's knowing waiver of a third evidentiary hearing, and imputed income to Byers based on his expenses. But the court erroneously failed to deduct Byers's federal taxes and a portion of his voluntary retirement contributions from the income available for child support. For that reason, we affirm in part and reverse in part, and remand for further proceedings consistent with this opinion.

## II. FACTS AND PROCEEDINGS

### A. Background

Byers and Ovitt, who have never been married, are the biological parents of Kristerfer Byers, a minor who was born on July 8, 1995. In June 1999 Byers and Ovitt filed a joint petition and stipulation for custody, which was granted. Ovitt subsequently moved to modify the custody arrangement and, in May 2002, she was awarded sole legal custody. Physical custody was divided between the two parents, with Ovitt having Kristerfer seventy percent of the time, including weekdays during the school year, and Byers having him for the remaining thirty percent of the time.

### B. The 2002 Child Support Order and Ovitt's Motion to Modify

In September 2002 the court issued a child support order requiring Byers to pay Ovitt $112.16 per month. The court based its calculation of Byers's income on his DR–305, which showed an adjusted annual income of $11,844.[1] Ovitt moved for a modification of

the court's order in December 2003, on the ground that Byers's income was higher than what he had reported. According to Ovitt, Byers had recently purchased a "2001 ... Ford Truck for [$]30,000," and a "[n]ew [h]ot tub," and was making substantial payments on his home mortgage. She also claimed that the Alaska Child Support Enforcement Division (CSED) was conducting a "[l]ife [s]tyle [i]nvestigation" of Byers. Byers filed an opposition to Ovitt's motion, and also sought a reduction in his child support obligations for 2002 and 2003.

### 1. The first hearing

In March 2004 Superior Court Master Suzanne Cole held an evidentiary hearing on the two motions. Ovitt, who had submitted the motion to modify pro se, was represented by an attorney; Byers represented himself.[2] Ovitt introduced two vehicle loan applications that Byers had submitted to a credit union. The first application, submitted in November 1999, stated that Byers's monthly income was $6,000. The second, submitted in March 2003, stated that his monthly income was $12,000, and that his monthly mortgage payment was $1,222. Byers testified that the loan applications were inaccurate because he had mistakenly listed his annual income instead of his monthly income, and because he did not read the application before signing it.

The superior court master found that the loan applications were "extremely vague and unclear," and ruled that Ovitt had not yet shown a change in circumstances that would justify altering the child support order. But the master noted that Byers had not submitted his tax return, and determined that an additional hearing was necessary:

> Well, the way I see things right now is I do not believe that Ms. Ovitt has met her burden of proof currently; however, I do believe that whether this has been neglected in the past or whether CSED has chosen to investigate this through another route ... I do believe that [Ovitt's attorney] is entitled to review [Byers's] entire tax return, including the Schedule C, to

---

1. The DR–305 is a standardized affidavit listing sources of income for child support purposes. *See* http://www.state .ak.us/courts/support .htm.

2. In the present appeal, Ovitt is proceeding pro se and Byers is represented by an attorney.

determine whether the deductions claimed for business are appropriate or not for child support purposes.

Now I still, even after that, I'm going to have to determine that a significant change of circumstances exists.... So it appears to me appropriate that you [Byers] do provide the tax return information as part of discovery, and we'll come back to this issue once that is completed....

Although the court required Byers to submit his tax return, it denied a request from Ovitt for discovery of Byers's company records going back to 1999.

### 2. The second hearing

At the second hearing, which was held on May 13, 2004, Ovitt called Theodore Sherwin, a certified public accountant, as a witness. Sherwin testified that he had received three separate 2003 federal income tax returns from Byers: a signed return from January 2004, reporting a gross income of $14,369; an unsigned return from March 2004, indicating a gross income of $22,316; and a signed return from April 2004, indicating a gross income of $18,074. The unsigned return was incomplete, as it did not include a form required for the calculation of self-employment taxes, a form explaining a non-cash deduction of $1,300, or a completed partnership form.[3] Byers protested that, because his business was a partnership, he was not required to file certain forms that Sherwin expected, and claimed that he was "trying to save the [c]ourt some time with this missing stuff."

Sherwin gave an estimate of Byers's 2003 income by adding up his yearly expenses and assuming that Byers's income was at least equal to the total amount spent. For certain expenses, such as utilities, car maintenance, insurance, and credit card payments, Sherwin used estimates. The total of these expenses, and the income that Sherwin attributed to Byers for 2003, was $48,850. Byers disputed Sherwin's estimate, claiming that his company paid half of his $1,245 mortgage payment and eighty percent of his vehicle loan payments and operating expenses. The superior court master directed Byers to provide Sherwin a "copy of what was actually

filed with the IRS with all attachments," and set a deadline for Ovitt to respond to this in writing. Byers was given a deadline a week after Ovitt's to reply.

Master Cole then offered to hold a third hearing if either party found one necessary. She explained in detail how Byers could request such a hearing:

The Court: You may respond to [Ovitt's response to the tax return] in writing, whatever you think is necessary or appropriate, and then if you feel that you need to come back to [c]ourt and have a hearing and put on other evidence, you can tell me at that time. You can, depending on what Mr. Sherwin submits.

Mr. Byers: Right.

The Court: But you need to tell me by June 1st that you want a hearing and why you want a hearing, what you intend to do at the hearing.

Mr. Byers: Okay.

The Court: Okay?

Mr. Byers: All right.

### 3. After the second hearing

Byers produced a copy of a 2003 tax return, dated May 18, 2004, claiming an adjusted gross income of $15,551. Sherwin then composed a letter analyzing the return, in which he noted that there was no proof about whether the return had been filed, that Byers was attempting to claim as personal deductions expenses that he was already claiming as deductions for his partnership, and that the income Byers attributed to the partnership was inconsistent with the expenses he was claiming the partnership had paid. The letter also pointed out a number of inconsistencies between the May return and the previous three returns, and emphasized that "[t]here is no indication in the data supplied how much money was actually paid to Thomas Byers [by the partnership] for 2003." Based on the information provided in the tax return, but excluding "any improper accounting for vehicle expenses, supplies ($74,000) and the like," Sherwin provided a possible estimate of Byers's income:

3. Byers was a fifty-percent partner in the Conservative Building Maintenance Company.

| | |
|---|---:|
| Ordinary Income per Form K–1 | $25,042 |
| [Simplified Employee Pension] Payment | |
| (pending proof of payment) | (4,242) |
| 50% of Depreciation taken on Form 1065 | |
| (This is a non-cash deduction[)] | 4,605 |
| Duplication of home office expenses | 8,382 |
| Permanent Fund Dividend | 1,108 |
| Net Income Tax Liability for 2003 | (2,919) |
| SEP payment to be refunded | 631 |
| | |
| Total | $32,607 |

Sherwin provided a second estimate, using Byers's expenses as a basis for estimating income:

| | |
|---|---:|
| Tax per Form 1040 for 2003 @ 5/18/04 | $ 2,919 |
| Allowable SEP paid for 2003 | 3,611 |
| Personal Household Costs-Mtg. Pmts. | 7,470 |
| Utilities | 913 |
| 20% of Vehicle Expenses | 2,131 |
| Child Support | 2,652 |
| Personal (Food, hygiene,. etc.)- | |
| Per IRS Guidelines for A[laska] | |
| (One person) @ $790 per month | 9,480 |
| | |
| Total | $29,176 |

The letter emphasized that these figures "assume[d] that Mr. Byers's latest testimony, information and the returns he has provided are more correct tha[n] any of the others he has previously provided," and went on to question whether Byers's SEP contributions were deductible for child support purposes.

Byers responded with a letter of his own, disputing the figures cited by Sherwin, and claiming that his partnership had recently been audited by the IRS. He attached a letter from the IRS, dated May 6, 2004, stating that it had examined his partnership's tax return and had made no changes. Byers did not request a third hearing.

### C. The Master's Report

The superior court master filed a report and recommended ruling in June 2004. Noting that Byers had submitted a total of four 2003 tax returns, each "seem[ing] to respond to questions or discrepancies raised by Ms. Ovitt," and that none of the four had been filed with the IRS, the master recom-

mended imputing income to Byers based on his yearly expenses. Using the second proposed estimate from Sherwin's letter, the master determined that Byers's adjusted annual income was $29,176, and recommended that he be required to pay $333.25 per month in child support. The superior court adopted the master's report, but amended it to reduce Byers's child support payment to $305.80 per month.[4]

## III. DISCUSSION

### A. Standard of Review

█ We review a trial court's modification of a child support order "under an abuse of discretion standard."[5] The same standard applies to a trial court's decisions about the scope of discovery.[6] "An abuse of discretion is found if we are left with the definite and firm conviction on the whole record that a mistake has been made."[7] Although the trial court's findings of fact will not be set aside unless clearly erroneous,[8] "[w]e use our independent judgment to decide whether it was error not to hold an evidentiary hearing."[9]

█ Because Byers was proceeding pro se before the superior court, and Ovitt is representing herself before this court, the record contains documents from both parties that were submitted without the benefit of counsel. We hold these pleadings to "less stringent standards than those of lawyers."[10]

### B. Failure To Dismiss Ovitt's Motion at the First Hearing

█ Byers's first argument is that the superior court master erred in failing to dismiss Ovitt's motion after an initial hearing, and that the decision to permit discovery of

---

**4.** The reduction involved Kristerfer's health insurance, an issue that has not been raised on appeal.

**5.** *Robinson v. Robinson,* 961 P.2d 1000, 1002 (Alaska 1998).

**6.** *Jones v. Jennings,* 788 P.2d 732, 735 (Alaska 1990).

**7.** *Wright v. Wright,* 22 P.3d 875, 878 (Alaska 2001).

**8.** *Horton v. Hansen,* 722 P.2d 211, 215 (Alaska 1986).

**9.** *Routh v. Andreassen,* 19 P.3d 593, 595 (Alaska 2001).

**10.** *DeNardo v. Calista Corp.,* 111 P.3d 326, 330 (Alaska 2005).

Byers's tax returns allowed Ovitt to engage in a "fishing expedition." But Alaska Civil Rule 90.3, which provides for the issuance and modification of child support orders, does not create an exception to the general rule that trial courts have "broad discretion in determining the extent of discovery." [11]

 Rule 90.3(h) permits a trial court to modify a child support order if "a material change of circumstances" occurs, such that "support as calculated under [Rule 90.3] is more than 15 percent greater or less than the outstanding support order." Trial courts "must consider all motions for a modification of child support," [12] and may modify the original order if a change in circumstances is shown by a preponderance of the evidence.[13] As Byers correctly notes, the change must be a factual event that affects a party's ability to pay, not just a proposal to change the method of calculation.[14]

 But Rule 90.3 places few limits on trial courts' "broad discretion" [15] regarding the scope of discovery, and this court has emphasized the importance of "tak[ing] all evidence necessary to accurately reflect the parties' economic reality." [16] Neither Rule 90.3, nor any of our cases, requires that a trial court adjudicating a motion to modify child support limit the proceedings to a single hearing or forbid discovery after the first hearing. To the extent that this rule addresses discovery at all, it supports the superior court's request for Byers's tax returns: Rule 90.3(e)(1) requires each parent in a

child support proceeding to file a statement under oath of his or her income, "accompanied by documentation verifying the income." [17] In the present case, a copy of Byers's complete tax return was not in the record, and the other evidence that had been submitted was inconclusive. In view of this lack of evidence, and Byers's duty under Rule 90.3(e)(1) to submit income documentation, it was "appropriate and well within its discretion for the superior court to ask for [Byers's] current tax returns." [18]

Furthermore, far from granting Ovitt unconditional license to engage in a "fishing expedition," the superior court limited the additional discovery to documents necessary to determine Byers's income in the tax year after the child support order was issued. When Ovitt requested documents beyond this, the court denied the request:

> [Ovitt's attorney]: I would like you to continue the hearing date. I'd like Mr. Byers to have a date to supply to us the company records from '99 through—
>
> The Court: No. We're not going backwards. I'm sorry Mr. Eschbacher, I'm not—
>
> [Ovitt's attorney] Well, the reason I want to go backwards is for comparison.
>
> The Court: I am not willing to do that.

By limiting discovery in this way, the trial court properly focused the proceedings on the central issue: whether Byers's income had changed significantly since the previous

---

11. *Jones*, 788 P.2d at 735.

12. *Acevedo v. Burley*, 944 P.2d 473, 475 (Alaska 1997).

13. *Id.*

14. *Cf. Bunn v. House*, 934 P.2d 753, 758 (Alaska 1997) (holding that "a change in a party's legal theory is not a change of circumstances which warrants the modification of a child support order").

15. *Jones*, 788 P.2d at 735.

16. *Routh*, 19 P.3d at 595.

17. Alaska R. Civ. P. 90.3(e)(1). The rule also permits a party to obtain "documents such as tax returns and pay stubs showing the [other] party's

income for the prior calendar year" upon written request while there is an ongoing monthly support obligation. Alaska R. Civ. P. 90.3(e)(2). Although Rule 90.3(e)(2) applies regardless of whether a party has moved to modify the order, it suggests that tax returns are viewed as highly probative evidence of income.

18. *Goossen v. Still*, No. S–10285, 2002 WL 31716561, at *8 (Alaska 2002) (holding that a superior court's request for income tax returns in the context of formulating a child support order was not error because the "tax returns would be a good source of information for the income information that the superior court previously did not have"). Although the superior court in the present case may have had information as to Byers's income when the original child support order was filed, it did not have information about what Byers's income was when Ovitt moved to modify the order.

order was filed. We therefore hold that the superior court did not abuse its discretion in permitting discovery of Byers's tax return.

### C. The Court's Failure To Schedule a Third Hearing

 Byers's second argument is that the court erred in "failing to sua sponte schedule a third evidentiary hearing following the parties' submission of supplemental authorities." He claims that the lack of a third hearing resulted in a determination based on "uncorroborated written statements," a violation of this court's holding that "Civil Rule 90.3 does not authorize child support trials by affidavit." [19]

In the present case, the superior court did not hold a "trial[ ] by affidavit." [20] It actively and repeatedly sought information about Byers's 2003 income, continuing discovery to obtain a current copy of Byers's tax return, scheduling a second hearing, again ordering Byers to submit a complete copy of his 2003 tax return, and even offering to hold a third hearing. Byers responded by submitting four incomplete versions of his 2003 tax return, which reported gross income ranging from $14,369 to $22,316 and were "replete with errors and omissions." As of the June 15, 2004 master's report, none of these returns appear to have been submitted to the IRS.

 Because of Byers's repeated failure to submit a complete and final 2003 tax return, the superior court imputed income to him based on his estimated expenditures. As the master's report recognizes, a trial court has broad discretion to impute income

based on "the most complete evidence before it" [21] if the record is incomplete. This discretion is particularly broad where the reason for the incomplete record is the parent's own unresponsiveness.[22] Imputing income to Byers based on his estimated expenses was therefore well within the trial court's discretion.

Byers also emphasizes that he was proceeding pro se, suggesting that his waiver of a third hearing might not have been a knowing one. The trial court has an obligation to inform a pro se litigant of the option of holding an evidentiary hearing, and to make it clear that the litigant must actively request the hearing.[23] Had the superior court failed to do this, Byers's waiver would be highly suspect. But the court expressly informed Byers of the option of holding a third hearing, told him that he would have to request the hearing by a certain date, and repeatedly confirmed that he understood. Byers was well aware that a third hearing was available if he asked for one, but he made no such request. For this reason, we hold that Byers knowingly waived such a hearing.

### D. The Court's Calculation of Byers's Income

 Byers's final argument is that the superior court erred in calculating his income. But his claim that the trial court should not have imputed income to him based on estimated expenses because it erred in finding that Byers was uncooperative lacks merit. As discussed above, the court's finding that Byers was uncooperative, and that

19. *Adrian v. Adrian,* 838 P.2d 808, 811 (Alaska 1992).

20. *Id.*

21. *Coghill v. Coghill,* 836 P.2d 921, 926 (Alaska 1992).

22. *Cf. Benson v. Benson,* 977 P.2d 88, 95 (Alaska 1999) (affirming a child support order based on imputed income because, "[d]ue to the lack of credible income information supplied by [the appellant], and his 'non-responsive' and 'contradictory' testimony regarding such information, [the superior court] was forced to impute income for the purposes of calculating child support"); *see also Hartland v. Hartland,* 777 P.2d 636, 640

(Alaska 1989) (noting that "Alaska law clearly permits a trial court to resolve a finding of fact against a party whose vexatious, contemptuous, or obstructive behavior causes the trial court to have insufficient evidence").

23. *Cf. Collins v. Arctic Builders,* 957 P.2d 980, 982 (Alaska 1998) (holding that the failure to inform a pro se litigant of specific defects in his or her notice of appeal and to give the litigant an opportunity to respond to those defects "is manifestly unreasonable and thus constitutes an abuse of discretion"); *Breck v. Ulmer,* 745 P.2d 66, 75 (Alaska 1987) (discussing the duty of the trial court to "inform a *pro se* litigant of the proper procedure for the action he or she is obviously attempting to accomplish").

he had not provided the requested documentation of his 2003 income, was amply supported by the record. In spite of repeated requests from the court, Byers did not submit a complete and final 2003 tax return. Moreover, he actively obstructed the fact-finding process by submitting four incomplete, and mutually inconsistent tax returns. As in *Benson v. Benson,* Byers's recalcitrance "forced [the trial court] to impute income for purposes of calculating child support." [24] For this reason, we hold that imputing income to Byers based on his estimated expenses was not an abuse of discretion.

 But Byers's argument that the court abused its discretion by refusing to grant him deductions for his federal income tax payments and contributions to a voluntary retirement program is more persuasive. Rule 90.3(a)(1) provides that adjusted annual income for the purposes of child support "means the parent's total income from all sources minus ... mandatory deductions such as ... federal, state, and local income tax ... [and] voluntary contributions to a retirement or pension plan." [25] The total deducted for voluntary contributions to retirement plans "may not exceed 7.5% of the parent's gross wages and self-employment income." [26] As this court has emphasized, "[c]ourts must follow the legal standards set forth in Rule 90.3 in determining awards of child support." [27]

The superior court imputed income to Byers based on the amounts spent by Byers during the year. Sherwin's expense-based method of estimating income totaled Byers's expenditures for a year and the resulting figure—$29,176—was Byers's imputed income. Yet Sherwin's calculation of Byers's expenses included Byers's payment of federal taxes and his voluntary contribution to a retirement account. Although the superior court used these estimated federal tax and voluntary retirement contributions as ex-

penses to impute income to Byers, it appears not to have deducted taxes or voluntary retirement contributions when determining Byers's income for child support purposes as required by Rule 90.3(a)(1)(B). Specifically, the superior court did not deduct from the imputed gross income the $2,919 which it found Byers paid in income taxes or the allowable voluntary retirement contribution of $2,188.20 (7.5% of the $29,176 imputed gross income), despite the fact that these expenditures were used to calculate the imputed gross income. As Byers correctly argues, these allowable deductions would have significantly reduced the income available to him for the purposes of child support. For that reason, we vacate the modified child support order and remand for a determination of Byers's income tax and retirement contributions for 2003. The superior court may impute income based on the expenditures-based method that it used or it may use another recognized method of imputation. [28] If better documentation (such as the 2003 tax returns actually submitted to the IRS) is now available, the superior court may also recalculate Byers's actual gross income for 2003. But whatever method it uses to impute or determine Byers's income for Rule 90.3 purposes, the court should deduct Byers's federal income taxes, as well as voluntary retirement contributions up to 7.5% of his gross income.

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM in part and REVERSE in part the judgment of the superior court, and REMAND for further proceedings consistent with this opinion.

24. 977 P.2d at 95.

25. Alaska R. Civ. P. 90.3(a)(1)(A)-(B).

26. Alaska R. Civ. P. 90.3(a)(1)(B).

27. *Teseniar v. Spicer,* 74 P.3d 910, 915 (Alaska 2003) (reversing in part a superior court's modi-

fication of a child support order because the court did not allow deductions for mandatory expenses enumerated in Rule 90.3(a)(1)).

28. For example, the court could use Department of Labor wage statistics to impute income to Byers.