Mark V. WARD, Appellant,

v.

Meilyn P. URLING, f/k/a Meilyn
P. Ward, Appellee.

No. S–12379.

Supreme Court of Alaska.

Sept. 14, 2007.

**50**

Mark V. Ward, pro se, Anchorage.

Carl D. Cook, Houston & Houston, P.C., Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

**I. INTRODUCTION**

Mark Ward appeals the superior court's order refusing to modify Ward's child support obligation. He contends that the court

1. Both parties to this appeal have subsequently remarried.

erred by (1) prematurely issuing a final order, (2) incorrectly determining the parties' income for support purposes, and (3) refusing to impute income to Ward's ex-wife, Meilyn Urling. Ward also appeals the award of attorney's fees to Urling and alleges judicial bias. Because evidence in the record allowed the court to reasonably calculate Urling's income, we conclude that the court did not prematurely enter a final order. Because evidence supports the court's findings that Urling was not unreasonably underemployed, the court did not err in refusing to impute income. We also conclude that the court did not abuse its discretion in awarding attorney's fees and that Ward's allegations of judicial bias are without merit. Accordingly, we affirm the decision of the superior court in all respects.

**I. FACTS AND PROCEEDINGS**

**A. Facts**

Mark Ward and Meilyn Urling (formerly Meilyn Ward)[1] divorced in November 1996. The divorce decree awarded the parties joint legal custody and shared physical custody of the couple's two children and ordered Ward to pay Urling $231.48 per month in child support.

**B. Proceedings**

In May 2005 the Child Support Services Division (CSSD) moved to modify the 1996 support order, noting "a material and substantial change in circumstances" and requesting that Ward's monthly payments be increased from $231.48 to $559.00. Ward opposed CSSD's motion and asked the court to impute income to Urling on the grounds that she was voluntarily underemployed.[2] CSSD responded that Urling was not underemployed, but it encouraged the court to consider holding an evidentiary hearing on the issue.

On August 16, 2005, Master Andrew Brown conducted a hearing on CSSD's motion to modify, focusing primarily on whether

2. The response also requested an adjustment for provision of health care coverage and medical premiums, which are not at issue in this appeal.

Urling was voluntarily underemployed.[3] On August 24, 2005, Master Brown issued his report and recommendations. The report determined that Urling was unreasonably underemployed and imputed income to her for purposes of calculating child support. Despite this determination, the report ultimately recommended that Ward's monthly support obligation be *increased* to $682.86 per month[4] because his income had increased since the original support order was calculated.

On September 5, 2005, Ward filed objections to the report. He primarily argued that Master Brown had erred in adopting a low "mean experienced rate" of $15.06 per hour when calculating Urling's potential income. Urling also objected to the master's determination that her potential income should be based on a forty-hour work week. On September 13, 2005, Superior Court Judge Sen K. Tan entered an order adopting the master's report.

Only three months later, in December 2005, Ward moved to modify the support order. He asserted that the court had erred in adopting the $15.06 hourly wage and in imputing insufficient income to Urling. He argued that the court should calculate Urling's 2004 salary potential at $20 per hour. Ward also disputed the court's application of tax methodology in determining the parties' respective incomes. Urling opposed the motion, contending that Ward had failed to show a change of circumstances under Civil Rule 90.3(h)(1).

The court conducted hearings on Ward's motion on February 24 and March 31, 2006.[5] At the conclusion of the March hearing Master Brown took the matter under advisement and verbally instructed Urling to produce a copy of her 2005 tax return if it was completed before he issued his final report.

In April 2006 Ward submitted a "request for clarification" of the court's verbal instruc-tion. In response, Master Brown subsequently issued a written order requiring Urling to file her tax return with the court if it was completed before issuance of the master's report.

Master Brown issued his report on May 23, 2006, by which date Urling had not filed a tax return.[6] The report determined that Urling had shown good cause to work less than the standard forty-hour workweek and that she was not unreasonably underemployed, and it calculated her support obligation on the basis of her $26,400 yearly salary. The report recommended that Ward's request for modification be denied on the grounds that the court's new calculations would result in Ward paying 9.8% *more* than the September 13, 2005 support order then in effect.

Ward objected to the master's report. He argued that Master Brown had erred by: (1) applying different tax calculations to the parties' respective incomes; (2) failing to find that Urling was unreasonably underemployed; and (3) using her salary as the income benchmark when determining her support obligation. On June 9, 2006, Judge Tan entered an order adopting the master's report.

On June 23 Urling moved for attorney's fees. No timely opposition was filed.

On July 10 Ward's attorney moved to withdraw and Ward personally moved for an extension of time in which to file a "Notice of Appeal to the June 9th Master's Report" on the grounds that he had left town on a remote vacation one day after receiving the order.[7] Ward also filed a motion for reconsideration and opposed Urling's request for attorney's fees.

On July 11, 2006, Judge Tan denied Ward's motion for reconsideration, noting "[i]n addition to being untimely, the motion was filed by the plaintiff himself, and the court file shows that Mr. Ward is represent-

---

3. Ward was represented by counsel, while Urling was not.

4. This was reduced to $586.02 in light of Ward's providing for the children's health insurance.

5. Both parties were represented by counsel at these hearings.

6. Urling had received an extension to file her tax return that made her tax return due by October 2006.

7. The court granted Ward's motion for extension of time in which to file a notice of appeal.

ed by an attorney." On July 20, the court signed an order of withdrawal of Ward's counsel and awarded Urling thirty percent of her attorney's fees.

Ward then filed a second motion for reconsideration, arguing that he had asked his counsel to withdraw while Ward was on vacation, that "signature requirements" precluded his counsel's filing of the motion to withdraw until Ward's return, and that Ward had diligently filed his motions on the first business day following his return from vacation. Urling opposed the motion on the grounds that it was untimely and that it failed to address any grounds for reconsideration as required under Civil Rule 77(k).[8]

On August 18, 2006, Judge Tan denied Ward's second motion for reconsideration, noting "[i]n addition to being untimely, this court agrees with the findings of Master Brown." Ward now appeals the court's order of June 9, 2006 denying his motion to modify child support.

### III. STANDARD OF REVIEW

■ Trial courts are granted broad discretion in fashioning child support determinations.[9] We review a determination of whether to modify a child support order for abuse of discretion.[10]

■ Whether a party is voluntarily underemployed is essentially a question of fact.[11] We set aside a trial court's factual findings only if they are clearly erroneous,[12] including a trial court's findings regarding a

party's income.[13] This standard also applies to a trial court's determination of whether to impute income.[14]

■ We review an award of attorney's fees for abuse of discretion.[15]

### IV. DISCUSSION

Ward raises three primary issues on appeal. First, he argues that the court erred in refusing to grant his request for modification of his child support obligations on the grounds that the master's report was prematurely entered prior to receipt of Urling's 2005 tax return, which resulted in the court applying improper tax calculations when determining the parties' support obligations. He further asserts that the court erred in refusing to find Urling voluntarily underemployed and in failing to impute income. Second, he contends that the court abused its discretion in awarding Urling attorney's fees. Finally, he alleges that both Master Brown and Judge Tan were biased against him.

### A. The Court Properly Denied Ward's Motion to Modify Child Support.

■ Civil Rule 90.3(h)(1) provides that a child support award "may be modified upon a showing of a material change of circumstances." A material change of circumstances will be presumed where support calculated under the rule is fifteen percent greater or less than the outstanding support order.[16] Both legal and factual changes may

---

**8.** On August 7 Ward filed a "motion for contempt" requesting that the court find Urling in contempt for refusing to obey the court's order to provide her 2005 income tax return. Urling opposed and cross moved for attorney's fees. There is no indication whether the court ultimately ruled on these issues and they are not at issue in this appeal.

**9.** *Zimin v. Zimin*, 837 P.2d 118, 123 n. 8 (Alaska 1992).

**10.** *Olmstead v. Ziegler*, 42 P.3d 1102, 1104 (Alaska 2002).

**11.** *See Robinson v. Robinson*, 961 P.2d 1000, 1004 (Alaska 1998).

**12.** *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000).

**13.** *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003).

**14.** *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998).

**15.** *Hixson v. Sarkesian*, 66 P.3d 753, 757 (Alaska 2003).

**16.** *See* Rule 90.3(h)(1). The framework for determining support for cases involving shared physical custody under Rule 90.3(b)(1) requires the court to (1) calculate what each parent would owe if the other parent had primary custody under rule 90.3(a); (2) multiply that amount by the amount of time the other parent has physical custody; (3) classify the parent with the larger figure as the obligor; (4) take the difference between the parents' payments under the Rule 90.3(a) calculation; and (5) multiply the difference by 1.5. The final number is generally the obligor parent's support obligation.

amount to a material change in circumstances.[17] As the moving party, Ward was obligated to show by a preponderance of the evidence that a material change existed.[18]

### 1. The court did not err in issuing an order prior to receipt of Urling's 2005 income tax return.

■ Ward contends that the court "[failed] to enforce its written order demanding Ms. Urling's federal income tax return prior to drafting and approving the master's report," and that as a result the court improperly determined Urling's tax filing status and net income.

At the conclusion of the March 2006 hearing, and upon inquiry from Ward's counsel as to whether Urling would be required to submit her 2005 tax return, Master Brown stated that returns "are always useful" and that "if Ms. Urling's tax return is done prior to your receiving a Master's Report, I do want a copy okay?" Master Brown subsequently clarified:

> If a master's report is issued without Ms. Ward's 2005 tax return being part of the evidence, and the court later finds out that the return had been done prior to the master's report being mailed out, then the court will sua sponte consider vacating any ruling on the master's report, ordering a new hearing, and possibly holding the Defendant liable for any and all future attorney's fees. . . .

■ The conditional language in the master's verbal instructions and written order made clear that issuance of the master's report was *not* contingent on the production of her tax return. If Urling's tax return had been completed and she had failed to produce it prior to receiving the master's report, Urling would have violated the court's order. That is simply not the case here.[19]

Moreover, nothing in the evidence suggests that Urling was vexatious in not providing her income information to the court. At the March hearing she testified that she was undergoing an audit and that her tax return was not yet available. She subsequently provided a letter from her accountant stating that her tax return was not completed and that Urling and her husband had been granted a filing extension until October 2006.[20] There is no evidence that Urling's 2005 tax return was completed prior to issuance of the master's report and nothing in the record indicates that Urling defied a court order to produce her tax return or that the court failed to enforce its own order.

■ Ward also argues that because the court issued the support order before Urling's tax return was produced, the master improperly calculated her net income. More specifically, he alleges that because Master Brown unfairly rewarded Urling for not submitting her tax return by calculating her income assuming that she filed a separate, rather than joint, tax return. Ward appears to believe that calculating Urling's income based on a separate tax return while calculating his own income based on a joint return

---

17. *Rusenstrom v. Rusenstrom*, 981 P.2d 558, 563 (Alaska 1999).

18. *See Acevedo v. Burley*, 944 P.2d 473, 475 (Alaska 1997). Though we address each of Ward's arguments in turn below, we note that it is highly questionable whether Ward was even entitled to an evidentiary hearing upon filing his motion to modify child support in December 2005. A trial court may deny a motion to modify without an evidentiary hearing where the pleading fails to set forth a prima facie showing of changed circumstances. *Id.* Even then, a court may deny a hearing where the moving party makes only bare assertions or generalized allegations that fail to create a genuine issue of material fact. *Epperson v. Epperson*, 835 P.2d 451, 453 & n. 4 (Alaska 1992). In this case, Ward's motion to modify was filed only three months after

the court's previous modification determination, and the allegations contained therein expressed little more than Ward's ongoing dissatisfaction with the court's previous factual findings pertaining to Urling's income.

19. Trial courts are generally afforded broad discretion in determining the scope and extent of discovery. *See Byers v. Ovitt*, 133 P.3d 676, 681 (Alaska 2006). While the court could have stayed entry of the final order pending receipt of Urling's tax return, it elected not to do so. The court's reason for doing so is not evident from the record.

20. In October 2006 Urling moved to supplement the record on appeal with her 2005 income tax return. We denied that motion.

distorted the differences in their gross incomes to Urling's benefit.

Rule 90.3(a)(1) provides that a court's determination of a party's adjusted annual income "means the parent's total income from all sources minus ... mandatory deductions such as ... federal, state, and local income tax...." Because Ward's 2005 tax return revealed that he filed "married filing jointly," Master Brown subtracted Ward's wife's income and her proportionate share of the household income tax liability before calculating Ward's net income for support purposes.[21] But when calculating Urling's income, Master Brown noted there was no evidence in the record of whether she and her husband filed a joint or separate return.[22] He concluded that Urling's 2005 tax return was "presumably a joint one for her and her husband" but found that "[because] there is no evidence as to how Ms. Urling does her income tax, ... the only reasonable way for the court to compute her income tax on [her annual income] is by regarding her as doing a married filing separately return...."

Because there was no evidence regarding Urling's husband's income in the record, and because Urling's tax return was not in evidence, the court could not accurately determine Urling's personal income using a "married filing jointly" tax methodology. Master Brown therefore exercised his discretion and determined Urling's income assuming she had filed an individual tax return. To the extent that the court might have elected to place both parties on identical footing, the only other alternative would have been to calculate Ward's income as if he had filed a separate tax return, which Ward did not do.[23] Even assuming the court had done so, Ward has failed to show that the monthly support calculations would have amounted to a material change of circumstances of at least fifteen percent as required under Rule 90.3. Thus, to the extent that the court may have erred on this issue, we conclude that the error is harmless.

 Furthermore, there was sufficient evidence in the record for the court to determine Urling's net income even absent her tax return. A trial court's calculation of income should be a "reasonable assessment" of the obligor's earning capacity.[24] In order for the court to adequately and reasonably assess a party's income, there must be sufficient evidence from which the court can make informed calculations.[25] Urling provided the court with her W–2's from 2001 through 2005, pay stubs from recent pay periods, and copies of her unemployment checks, and she personally testified to her annual salary. Relying on this evidence, the court was able to reasonably assess Urling's income for the purposes of computing her support obligation.[26] We therefore reject Ward's claim that the court erred in issuing an order prior to receipt of Urling's tax return.[27]

21. The report made this calculation "[i]n light of *Bergstrom v. Lindback*, 779 P.2d [1235,] 1237 (Alaska 1989), requiring the income tax computation to be based on the income being used for support purposes...."

22. Ward suggests that Urling's 2004 tax return serves as proof that she and her husband filed a joint tax return in 2004 and thus the court should have calculated her income accordingly for 2005. But a review of the record indicates that Urling's 2004 return was not submitted to the court prior to the close of evidence and thus was not available for the court's review. Not until Ward's April 17, 2006 request for clarification does Urling's 2004 tax return appear in the record as an exhibit.

23. As Master Brown's report noted, there was no evidence of Urling's husband's income for the purposes of calculating what Urling's net income may have been under a "married filing jointly tax status."

24. *See Kowalski v. Kowalski*, 806 P.2d 1368, 1372 (Alaska 1991).

25. *Routh v. Andreassen,* 19 P.3d 593, 595 (Alaska 2001) ("[T]rial courts must take all evidence necessary to accurately reflect the parties' economic reality.") (quotations omitted).

26. *See Coghill v. Coghill*, 836 P.2d 921, 925 (Alaska 1992) (affirming court's reliance on prior calendar year income as best evidence of party's current income).

27. *See Byers*, 133 P.3d at 683 (noting court may determine party's income by various means); *Coghill*, 836 P.2d at 924 n. 1, 926–27(indicating court has discretion to select one tax method over another).

**2. The court did not err in concluding that Urling was not voluntarily underemployed and in refusing to impute income.**

Civil Rule 90.3 gives the court authority to calculate child support based on a parent's potential income if the parent is found to be unreasonably underemployed.[28] The relevant inquiry under Rule 90.3 is whether a parent's current situation and earnings "reflect a voluntary and unreasonable decision to earn less than the parent is capable of earning."[29] A trial court is granted discretion to choose "the best indicator of ... future earning capacity"[30] and to "impute income based upon 'the most complete evidence before it.'"[31] In deciding whether to impute income, a court is bound to consider the totality of the circumstances, including a party's "work history, qualifications, and job opportunities."[32]

In September 2005, following CSSD's motion to modify, the court found that Urling was unreasonably underemployed. That order, which adopted Master Brown's August 2005 report, noted that Urling had testified that she planned on working three days per week for eight hours per day and that her 2004 earnings were $22,559.50. The court found that there was "[no] proof that Ms. Urling has to reduce her work hours for necessary care of the children ... [or] cannot find full-time employment as a dental assistant" and imputed income to her based on a forty-hour per week schedule. The court refused to calculate her potential income at her actual wage of $22 per hour because "that is due to her particular longstanding employment relationship with [her employer] Dr. Yuknis and his paying her more per hour in compensation for her working less than full time." The court calculated her imputed income using the Department of Labor's "mean experienced" rate of $15.06 per hour to arrive at a gross yearly wage potential of $31,083.84. However, even with Urling's imputed income, the court determined that increases in Ward's income from the date when support had previously been set led to an *increase* in Ward's monthly support obligation to $682.86.

In contrast to the September 2005 order, the court's June 2006 order denying Ward's motion to modify concluded that Urling was not unreasonably underemployed. Master Brown found that the court's 2005 computations had erroneously computed Urling's income based upon a forty-hour workweek but that more extensive testimony indicated that "it is more realistic to consider her workweek as no more than a 32–hour one." He used Urling's new annual salary of $26,400 to calculate her support obligation. Because the court's final support calculations would have resulted in Ward paying more—not less— than that mandated under the September 2005 support order, but because this increase was only 9.8% and thus failed to meet the 15% modification threshold required under Rule 90.3, the court denied Ward's motion to modify.

Ward contends that the court's June 2006 order overlooked evidence indicating that Urling was underemployed and erred by refusing to impute income. He argues that the evidence established that Urling worked approximately twenty hours per week throughout 2005, hours that are "historically consistent" with her prior years of employment. Ward claims that the evidence established that Urling continues to work less than thirty-two hours per week, and that therefore her support obligation should be calculated based on her potential income rather than on her annual salary.

Ward's arguments are not wholly without merit. Contrary to Master Brown's finding that "there is no evidence as to Ms. Urling's

**28.** Alaska R. Civ. P. 90.3(a)(4).

**29.** *Beaudoin v. Beaudoin*, 24 P.3d 523, 528 (Alaska 2001).

**30.** *Virgin v. Virgin*, 990 P.2d 1040, 1049 (Alaska 1999) (concluding court not obliged to credit speculative testimony regarding possible decline in party's income).

**31.** *Byers*, 133 P.3d at 682.

**32.** Alaska R. Civ. P. 90.3 Commentary III.C.; *see O'Connell v. Christenson*, 75 P.3d 1037, 1039 (Alaska 2003).

actual hours worked in 2005," Urling testified that her 2005 hours averaged twenty hours per week. She also testified that under her new salary arrangement she worked four days per week and was expected to be on call when her employer was out of town. When asked if she would be expected to work more hours under her salary arrangement, she responded "possibly." Thus, Ward is correct to the extent he argues that the evidence indicates that Urling may continue to work less than thirty-two hours per week. Ward asserts that the court overlooked this evidence and erred by not finding that Urling was unreasonably underemployed. But while this argument is not without merit, we reject it for the reasons set forth below.

Evidence presented at the February and March hearings established that a thirty-two-hour workweek was standard dental practice. However, not only did Master Brown conclude that Urling had shown "good cause to work less than the standard 40–hour workweek," he also found that Urling's workweek could properly be considered *"no more* than a 32–hour one." (emphasis added). Testimony from Dr. Yuknis established that his dental assistants worked a maximum thirty-two hour workweek but that most worked less than thirty-two hours a week. Testimony from Sherry Evans, an office manager for a local dental office, indicated that while two dental assistants in that office worked thirty-two hours per week, two others worked only eight hours.

Moreover, Ward failed to present compelling evidence that Urling could supplement her employment with Dr. Yuknis. Ward provided some information to the court on an Anchorage "fill in list" for dental assistants interested in substitute work at other offices, suggesting that Urling was capable of supplementing her wages with Dr. Yuknis. But testimony presented at the hearings revealed the practical unlikelihood of Urling's ability to use this service. Dr. Yuknis testified that he preferred that his assistants did not use it. Dr. Williams testified that he did not recall the last time he had used the list, and

Dr. Ingrim testified that he had not used the list in the last two years. Ward also failed to present evidence that Urling had the opportunity to work more hours for Dr. Yuknis and elected not to do so. Thus, to the extent that Urling may work less than thirty-two hours per week, the evidence supports the court's findings that it was not unreasonable to do so.

An analysis of Urling's salary also supports the conclusion that Ward's position is flawed. Assuming that Urling was paid an hourly wage of seventeen dollars based upon a thirty-two hour workweek with two weeks vacation, she would earn approximately $28,000, only slightly above her actual salary. This hourly rate is on par with the "mean experienced" pay scale for dental assistants reflected in the Department of Labor's November 2004 statistics and is supported by testimony describing other dental assistants' wages.[33]

Furthermore, Master Brown found that Urling had a good relationship with her employer, worked for him for thirteen years, and that it was "unlikely that she could find a job to fill the other eight potential hours of the workweek without jeopardizing her job...." Dr. Yuknis testified that his assistants worked a maximum of thirty-two hours per week, but that most work less than that and that he preferred that his staff did not work for other offices. Master Brown concluded that in addition to there being "insufficient evidence as to the likelihood of [Urling] being hired to work in some other dentist's office, ... there is also the possibility that her doing so could jeopardize her being employed by Dr. Yuknis." Adequate evidence supported the court's conclusions.

■ While Urling may work less than a thirty-two hour workweek, and while her pay might arguably appear lower than one might expect for a dental assistant of her experience, the court's findings on these issues are not clearly erroneous. Nothing in our law compels a party to earn the maximum possible wage or face imputation:

**33.** Sherry Evans testified that Dr. Lateen's previous "expanded duty" dental assistants were paid between $16 and $19 an hour. Tonya Kish, Dr.

Yuknis's office manager, testified that Urling was the highest paid dental assistant in the office.

We think it important to observe that [the rule on imputed income] does not rigorously command pursuit of maximum earnings. The rule's more modest objective is to give courts broad discretion to impute income based on realistic estimates of earning potential in cases of voluntary and *unreasonable ... underemployment....* [T]he boundaries of Alaska's rule are best left to be defined through case-by-case consideration based on the totality of the circumstances.[34]

We therefore conclude that the court did not err in finding that Urling was not unreasonably underemployed, in determining Urling's annual salary to be the best indicator of her future earning capacity,[35] and in refusing to impute income.

## C. The Award of Attorney's Fees Was Proper.

■ Ward next contends that the court prematurely awarded Urling attorney's fees before she had submitted her tax return, that the amount of fees claimed was excessive, and that the court improperly awarded fees under the Rule 82 "contested with trial" schedule. The court awarded Urling thirty percent of her total claimed fees of $3,487.50, for a total fee award of $1,046. Urling responds that Ward's challenges to the fee award are waived because Ward failed to file a timely opposition, failed to request an extension of time in which to file a response, and failed to file a notice of appeal disputing the amount of fees awarded. We need not address Urling's procedural defenses to Ward's claims on this issue because we conclude, on the merits, that the award of attorney's fees was proper.[36]

■ Rule 82(b)(2) provides that where a prevailing party recovers no money judg-ment, the court shall award that party in a case "which goes to trial" thirty percent of the party's reasonable actual fees. We will reverse an award of attorney's fees if the court "abused its discretion by compensating excessive attorney hours"[37] or the award is otherwise "manifestly unreasonable."[38]

We have previously upheld attorney's fee awards in child support modification proceedings.[39] And we have implicitly recognized that awards of attorney's fees on a "contested with trial" schedule may be appropriate following evidentiary hearings on support and custody issues.[40]

Urling's attorney provided representation at two separate evidentiary hearings, requiring counsel to solicit and rebut testimony from seven witnesses regarding the standard hourly workweek and pay scale for dental assistants. Counsel also filed a pre-hearing brief and engaged in extensive motion practice, nearly all of which was in response to Ward's repetitive attempts to have the court impute greater income to Urling. Counsel claimed he expended fifteen and one-half hours of work at a rate of $225 per hour in connection with this matter. Under the facts presented here and the amount of work performed, we conclude that the amount of fees awarded was not manifestly unreasonable and that there was no abuse of discretion in the court's award.

## D. Ward's Allegations of Judicial Bias Are Without Merit.

■ Ward's final argument is that both Master Brown and Judge Tan expressed an "unexplained and unwarranted leniency that creates the appearance of bias towards a particular party." Ward fails to allege any actions that would support his

**34.** *Beaudoin v. Beaudoin,* 24 P.3d 523, 530 (Alaska 2001) (emphasis in original).

**35.** *See Pugil v. Cogar,* 811 P.2d 1062, 1067 (Alaska 1991).

**36.** Ward's contention that the court prematurely awarded attorney's fees before receipt of Urling's tax return is without merit for the reasons we expressed in Part IV. A.1., *supra.*

**37.** *O.K. Lumber v. Providence Wash. Ins. Co.,* 759 P.2d 523, 528 (Alaska 1988).

**38.** *Marron v. Stromstad,* 123 P.3d 992, 998 (Alaska 2005).

**39.** *Patch v. Patch,* 760 P.2d 526, 531 (Alaska 1988) (applying Rule 82 to modification of child support proceeding).

**40.** *See Vokacek v. Vokacek,* 933 P.2d 544, 549–50 (Alaska 1997) (upholding fee award which included "contested with trial" amount following evidentiary hearing on child support arrearages and request to modify support).

claim other than disputing the merits of the court's determinations on the issues raised on appeal. Indeed, each of Ward's allegations of bias is simply another iteration of his own discontent with the court's substantive rulings. Contrary to Ward's suggestions, the simple fact that a judge denies a particular motion is not grounds for claiming judicial bias.[41]

Ward's comments regarding Judge Tan's alleged partiality on the basis of his ethnic and racial background are particularly troubling and unfounded. Ward notes that "Appellee's first name is Meilyn, an Asian name.... [Judge] Tan appears to be of Asian descent. Due to the unexplainably biased rulings, and that judges too are human, it would seem prudent to ask for a judicial reassignment of this case." A review of the record in this case "fails to reveal any unfairness in the conduct of the [proceedings]" and Ward's allegations fail to support any particular instances of bias.[42] Because Ward's arguments regarding the alleged bias appear for the first time on appeal, and are little more than evidence of Ward's general dissatisfaction with the court's rulings,[43] his arguments on this point are without merit.

## V. CONCLUSION

Because the superior court did not err in denying Ward's motion to modify child support before the receipt of Urling's tax return, and did not err in finding that Urling was not voluntarily or unreasonably underemployed, we AFFIRM the superior court's support order. Because we find no abuse of discretion in the court's decision to award attorney's fees and in the amount of fees awarded, we AFFIRM the court's award. Finally, for the reasons set forth above, we reject Ward's allegations of judicial bias.

BRYNER, Justice, not participating.

---

**41.** *See State v. City of Anchorage,* 513 P.2d 1104, 1112 (Alaska 1973) ("Mere evidence that a judge exercised judicial discretion in a particular way is not sufficient to require disqualification."), *overruled on other grounds by State v. Alex,* 646 P.2d 203 (Alaska 1982).

**42.** *See Long v. Long,* 816 P.2d 145, 156 (Alaska 1991).

**43.** *See Lacher v. Lacher,* 993 P.2d 413, 422 (Alaska 1999).