NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARK KOENEMAN, | ) | |
| | ) | Supreme Court No. S-13882 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-03-03806 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| SUSAN BOERSMA, | ) | AND JUDGMENT* |
| f/k/a Susan Koeneman, | ) | |
| | ) | |
| Appellee. | ) | No. 1403 - December 7, 2011 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Stephanie E. Joannides, Judge.

Appearances: Mark Koeneman, pro se, Anchorage, Appellant. Susan Boersma, pro se, Anchorage, Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices. [Christen, Justice, not participating.]

## I.     INTRODUCTION

Parents divorced and shared custody of their children in various custodial arrangements. The superior court referred the parents' dispute over child support to a master to calculate support for varying periods of changing custody and ultimately approved the master's report. The father appeals a number of issues, but we affirm the superior court's orders.

---

\*     Entered pursuant to Appellate Rule 214.

## II.    FACTS AND PROCEEDINGS

Mark Koeneman and Susan Boersma married in November 1984 and have seven children.  They separated in July 2002.  In June 2004 they divorced and entered into a comprehensive settlement agreement.  Despite the settlement agreement, they extensively litigated, negotiated, and re-arranged child custody between 2004 and 2007.

Mark, who is self-employed, ceased making support payments in May 2005.  He sought a reduction in his support obligation, arguing that:  declining business receipts reduced his income; Susan was voluntarily underemployed prior to her April 2005 employment and income should be imputed to her; and he was entitled to income deductions for various expenses under Alaska Rule of Civil Procedure 90.3.[1]

In April 2006 the court modified the 2004 custody and visitation agreement and scheduled an August 2006 trial to resolve custody and support issues.  Due to administrative oversight and the parties' extensive filings in this case, the court's order establishing child support was not entered until December 2007.  The court found that between February 2004 and April 2005 Susan had been voluntarily unemployed and imputed income of $10 per hour.  The court noted the wide disparity between Mark's claimed income of $10,000 to $20,000 per year and Susan's request that his income be imputed as $8,900 per month.  The court examined the financial information Mark provided and said it was "conflicting" and contained "insufficient information to support many of his deductions."  The court calculated Mark's child support obligation for 2003 through March 1, 2005, based on his 2004 Child Support Guidelines Affidavit.  The

---

[1]    Rule 90.3 provides that adjusted annual income shall be calculated by taking the parent's total income minus allowable deductions.  Alaska R. Civ. P. 90.3(a)(1)(E).

court ordered that Mark continue paying support based on this calculation, but referred the matter to a master to determine Mark's income for purposes of support from March 1, 2005, forward.

The master held multiple hearings from February 2008 to May 2008. Susan and Mark challenged each other's claimed incomes and expenses. The master calculated Susan's income based on imputed income prior to her April 2005 employment and then on her W-2 documents. Mark argued that his business suffered losses and he had minimal income for child support purposes. On cross-examination Mark admitted a variety of discretionary purchases, including a boat, a new car for his daughter, a new motorcycle, and vacations. The master found Mark's financial documents were "an inaccurate reflection of income," particularly Mark's "expensing to the business" items that were "actually personal expenses." Rather than relying on Mark's documents, the master examined Mark's financial records and re-calculated his actual income for 2004, 2005, and 2006. Mark did not provide financial records for 2007; the master averaged 2004 to 2006 actual income to impute Mark's 2007 income. The master began with Mark's claimed income and expenses, disallowed specific deductions, added miscellaneous income, and calculated adjusted income for purposes of establishing child support under Rule 90.3. The master established Mark's monthly support obligation in varying amounts for different periods from 2004 through April 1, 2007, and his ongoing obligation from April 1, 2007, forward.

Both Mark and Susan sought reimbursement for the children's medical expenses. The master noted that Susan had health insurance coverage for the children at no additional cost through her union membership, and that covering them on Mark's insurance was unnecessary. The master found that Mark claimed the entire cost of his "major medical policy," and failed to attest to the amount attributable to the addition of coverage for the children. The master further found that the parties paid for some

medical expenses out-of-pocket because Mark objected to using Susan's available Denali KidCare benefits. The master concluded that assigning the cost of those expenses to Susan was unreasonable. The master disallowed reimbursement for Mark's health insurance and the out-of-pocket costs.

The master then calculated Mark's child support obligation based on hybrid custody under Rule 90.3(b)(3). Both parties objected. The superior court denied most of these objections, but directed the master to recalculate the obligation accounting for the three oldest children attaining majority during the calculation period. The master made this change, otherwise maintaining his earlier recommendations. The superior court adopted this supplemental recommendation as the court's final child support order for June 1, 2005, through September 30, 2008, and from October 1, 2008, forward.

Mark appeals.

## III. STANDARD OF REVIEW

We generally review decisions to modify a child support award for an abuse of discretion,[2] reversing "only if based on the record as a whole this court is left with a definite and firm conviction that a mistake has been made."[3] We review both a trial court's findings regarding a party's income as well as a determination of whether to impute income for clear error.[4] We interpret child support and divorce settlement agreements de novo.[5] Similarly, we apply de novo review to child support issues

---

[2]     *Williams v. Williams*, 252 P.3d 998, 1004 (Alaska 2011).

[3]     *Rosen v. Rosen*, 167 P.3d 692, 695 (Alaska 2007) (quoting *Flannery v. Flannery*, 950 P.2d 126, 129 (Alaska 1997)).

[4]     *Ward v. Urling*, 167 P.3d 48, 52 (Alaska 2007).

[5]     *Cook v. Cook*, 249 P.3d 1070, 1077 (Alaska 2011) (reviewing divorce settlement agreement de novo); *Dunlap v. Dunlap*, 131 P.3d 471, 474 (Alaska 2006)

(continued...)

involving a question of law such as interpreting a civil rule[6] or the correct method for calculating child support.[7]

## IV. DISCUSSION

Mark raises 27 points on appeal but briefs only a few. Arguments are waived on appeal if they are inadequately briefed;[8] we address the adequately briefed issues in the order Mark presented them.

### A. The Master's Determination Of Mark's Income

Mark challenges the master's method of determining income on the basis that "imputing income is not allowed if factual information is present." Mark contends that it was error for the master to calculate income through a line-by-line assessment of Mark's documents rather than accepting his stated figures. Mark argues that the master's income calculation fails to produce findings "adequate for rational appellate review."

The master estimated Mark's 2004 through 2006 income based on his business financial documents, disallowing certain expenses, rather than using Mark's tax documents or stated income. We addressed a similar situation in *McDonald v. Trihub*.[9] In that case, an obligor appealed the superior court's income calculation as an improper

---

[5]    (...continued)
(reviewing support agreement de novo).

[6]    *Millette v. Millette* (*Millette II*), 240 P.3d 1217, 1219 (Alaska 2010) (citing *J.L.P. v. V.L.A.*, 30 P.3d 590, 594 (Alaska 2001)).

[7]    *Id*. (citing *Millette v. Millette* (*Millette I*), 177 P.3d 258, at 261 (Alaska 2008)).

[8]    *Barnett v. Barnett*, 238 P.3d 594, 598 n.11 (Alaska 2010) ("[A]rguments are waived if they are inadequately briefed on appeal.").

[9]    173 P.3d 416 (Alaska 2007).

estimate because he had provided actual income information.[10] We held that a trial court's income calculation for establishing a child support obligation need only be a "reasonable assessment" of an obligor's earning capacity.[11] We noted that making an educated, reasoned estimate was not precluded, and that relying on supplied data was not required, especially "amid evidence that was at best contradictory and inchoate, and at worst misleading."[12] The same holds true here.

The master estimated Mark's 2007 income by averaging the 2004 to 2006 results. Mark's arguments do not directly address 2007; while Mark provided data for 2004 through 2006, he provided no 2007 income information. The master did not err by determining income for one year over a three-year base, especially in light of Mark's admittedly fluctuating business income.[13]

We ordinarily leave the task of weighing conflicting evidence and the credibility of witnesses to the trial court.[14] The master's method of determining Mark's income by examining his business financial documents, disallowing personal expenses, and averaging the data available was reasonable and not an abuse of discretion.

B.    The Master's Uncovered Medical Expense Decisions

Mark challenges the disqualification of several proposed deductions and reimbursements. Mark seeks reimbursement for disallowed medical expenses. Mark

---

[10]    *Id*. at 425.

[11]    *Id*. (citing *Kowalski v. Kowalski*, 806 P.2d 1368, 1372 (Alaska 1991)).

[12]    *Id*.

[13]    *See Keturi v. Keturi*, 84 P.3d 408, 413 (Alaska 2004) (approving averaging income for Rule 90.3 especially when income was subject to "very erratic" swings).

[14]    *Millette I*, 177 P.3d at 261 (citing *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

also challenges the master's inclusion of Susan's uncovered medical expenses, relying on the commentary to Rule 90.3 for his claim that Susan "failed to provide documentation on any uncovered medical expenses" as required by Rule 90.3(d)(2). Mark argues that failure to include these expenses as a reimbursement in the master's report was an abuse of discretion.

Susan responds that she provided the appropriate documentation to the master and the superior court in the form of extensive medical bills. Susan reiterates the finding in the master's report: Mark's expenses were denied due to his failure to use Denali KidCare benefits Susan had available at the time.

Rule 90.3(d)(2) provides the court shall equally divide "reasonable health care expenses not covered by insurance unless the court orders otherwise for good cause."[15] Mark does not challenge the finding that these expenses resulted from his refusal to arrange for payment through Denali KidCare. It was not an abuse of discretion for the master to find good cause to deny Mark reimbursement for medical expenses when Mark could have avoided those expenses.

## C. Other Income Deductions And Expense Reimbursements

Mark appeals the denial of expenses he contends should have been considered income deductions or support reimbursements. These include work-related childcare, private school tuition, health insurance coverage, truck expenses and depreciation, IRA contributions, an offset or reimbursement for various payments made in and before 2004; he also contends the master incorrectly determined Susan's income and reiterates his claim for reimbursement of the children's medical expenses.

Mark's childcare expense claim is based on a self-generated ledger listing "childcare" totaling $2,300 in 2004, $1,845 in 2005, and $800 in 2006. Mark bore the

---

[15] Alaska R. Civ. P. 90.3(d)(2).

burden of proof to demonstrate these expenses were "necessary to enable [him] to work." Lacking proof that these expenses satisfied the requirements of Rule 90.3(A)(1)(E), we conclude that disallowing Mark's claimed childcare expenses was not an abuse of discretion.

Mark argues that Alaska law should permit a deduction for private school tuition as in the "best interest of the child." The commentary to Rule 90.3 makes it clear that the number of deductions permitted is "very limited."[16] Departing from the formula in Rule 90.3 requires a showing of good cause by clear and convincing evidence that manifest injustice will result.[17] The record does not reflect that Mark made such a showing. Because Mark did not raise this argument before the master, we review the master's decision for plain error.[18] We find no authority that a master errs by declining to deduct children's private school tuition from income.

Mark seeks a child support adjustment for health insurance costs, citing both the settlement agreement and Rule 90.3(d)(1) as entitling him to a credit for carrying health insurance. The master refused to continue the deduction allowed under the interim child support order and noted that *neither* parent could establish a reimbursable increased insurance cost for covering the children. Mark admitted before

---

[16]    Alaska R. Civ. P. 90.3(a)(1) cmt. III.D.

[17]    *Id*. at 90.3(c)(1).

[18]    *Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1091 (Alaska 2002) (explaining court reviews only for plain error when litigant fails to raise issue before trial court).

the master the children's insurance costs were "negligible." Mark is not entitled to a credit against his child support obligation without an actual increase in insurance costs.[19] The master did not err.

Mark seeks an income deduction for truck depreciation and expenses, claiming that the truck is "essential to the normal operation of the business," and arguing that because vehicle depreciation was not accelerated in his business expenses, the master abused his discretion in disallowing Mark's claimed truck expenses. We have intentionally rejected a "bright line test that all expenses recognized by the IRS are similarly recognized under Rule 90.3," instead holding the "determinative factor as to whether a claimed expense is deductible . . . is whether it is an 'ordinary and necessary expense[] required to produce the income' " for the business.[20] The record supports a finding that Mark's truck is not a "necessary expense" that is "required" to operate the business. Mark also used the truck for his own purposes, mixing personal and business uses. It was not an abuse of discretion to disallow Mark's truck expenses and depreciation as deductions from his adjusted income.

Mark contends that the master disallowed an exclusion for IRA savings, but this misunderstands the master's report. The master accounted for Mark's IRA deductions by reducing his business income. Mark consistently received this income reduction. The master did not err.

---

[19]    Alaska R. Civ. P. 90.3(d)(1) provides in relevant part:

> If the cost to the employee of covering the employee alone is the same as the cost to the employee of covering the employee and dependents, then there is no additional cost to the employee for adding the children and no portion of the cost of coverage may be allocated to the children.

[20]    *Neilson v. Neilson*, 914 P.2d 1268, 1274 (Alaska 1996) (internal citations omitted).

Mark seeks an offset or reimbursement for various payments made in and before 2004 while he also was paying over $2,400 per month in child support. Under the settlement agreement Mark and Susan entered into in June 2004, both were "responsible for their respective costs" up until that point, and the settlement agreement was a "full and complete settlement of all their property rights" for all claims. Mark is not entitled to reimbursement for any payments made prior to the settlement agreement, and the superior court did not err by denying this claim.

Mark contends that the superior court erred by calculating Susan's income beginning with her employment date and by not imputing income to her for a longer time period. Mark argues that "the issue of income was not addressed by the court in regard to the mother." Contrary to this argument, the record reflects that the superior court's first child support order imputed income to Susan at $10 per hour for the entire period of time after she finished home-schooling the children until she obtained employment. Once Susan became employed, the court based its calculation on her actual income, consistent with Rule 90.3. Declining to extend Susan's imputed income was not an abuse of discretion.

Mark also reiterates his claim for reimbursement of the children's medical expenses as fully set forth above. We decline to further address this issue.

### D. Calculating Support From Ordered, Rather Than Practiced, Custody

Mark contends that his "50% physical custody of the children" was not recognized in the child support calculations. We construe this as an argument that the superior court erred by relying on the custodial division ordered by the court rather than on actual physical custody. But the court's calculation is in line both with our precedent

and Rule 90.3. In *Turinsky v. Long*[21] we addressed whether custody ordered by the court or actual physical custody should provide the basis for support calculations.[22] We expressed concerns that allowing calculations not based on the court's custody orders could create incentives for manipulating custody to induce child support recalculations.[23] Rule 90.3(f) defines both shared and primary custody according to the period of time specified in the custody order.[24] The superior court did not err by calculating custody based on its written order.

### E. Judicial Bias

Mark alleges persistent bias in both the master's and the superior court's rulings. Susan points out a number of rulings in Mark's favor — such as having his initial child support obligation reduced by a third — but Mark maintains the superior court manifested an "unwillingness and inability to apply the rules equally" and a "bias on the part of the court and the unwillingness to use facts, law[,] and the rules in generating an order." Mark's generalized statements regarding court bias resemble the "iteration[s] of his own discontent with the court's substantive rulings" similar to that in *Ward v. Urling*.[25] As we held there, "the simple fact that a judge denies a particular motion is not grounds for claiming judicial bias."[26] Mark filed two motions for the superior court judge's disqualifaction, both were heard by the judge and referred to other

---

[21]     910 P.2d 590 (Alaska 1996).

[22]     *Id.* at 594-95.

[23]     *Id.*

[24]     Alaska R. Civ. P. Rule 90.3(f)(1)-(2).

[25]     167 P.3d 48, 58 (Alaska 2007).

[26]     *Id.* (citing *State v. City of Anchorage*, 513 P.2d 1104, 1112 (Alaska 1973)).

judges for review, and the superior court's decisions were affirmed. Mark's allegations contain little substance to establish judicial bias in the proceedings before the superior court or the master and to the extent that they are not waived for inadequate briefing, we find no bias.

## V.    CONCLUSION

We AFFIRM the superior court's child support order in all respects.