Annie E. SAWICKI, Appellant,

v.

John E. HAXBY, Appellee.

No. S–12447.

Supreme Court of Alaska.

June 13, 2008.

and took another that paid about half as much. The superior court found that Annie was voluntarily and unreasonably underemployed, imputed her prior income to her, and denied her motion. We affirm. Because John Haxby made out a prima facie showing of unreasonable underemployment, it was not error to require Annie to produce contrary evidence. Because the evidence does not demonstrate that it was clear error to impute income to her, the court did not err in denying her reduction motion.[1]

## II. FACTS AND PROCEEDINGS

Annie and John divorced in 1999. They initially shared equal custody of their two children, but when Annie moved from Alaska to Indiana, John obtained primary physical custody. The children live with John during the school year and visit Annie during the summer and school vacations. Annie has the children for approximately twelve to fourteen weeks per year.

The superior court issued the parties' present child support order in March 2004. Annie was then Director of National Development at St. Mary's College in Notre Dame, Indiana. Based on Annie's income from St. Mary's, the court found that her gross annual income was $52,000 and set Annie's support payment at $838 per month.

Annie voluntarily left her St. Mary's job in June 2005. She began working as a senior area manager in the business development department of a consulting firm called International Profit Associates, Inc. (IPA) in August 2005. She worked without pay during a training period that lasted until mid-November 2005. Annie also worked as a part-time event staffer at University of Notre Dame sporting events, but the time commitment and pay were minimal.

Alleging a reduction in her income, Annie asked the court in December 2005 to reduce her child support obligation. Based on her 2005 income, Annie claimed that her monthly child support payments should be reduced

Allison Mendel, Mendel & Associates, Anchorage, for Appellant.

Kenneth C. Kirk, Kenneth Kirk & Associates, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

. EASTAUGH, Justice.

## I. INTRODUCTION

Annie Sawicki moved for a reduction of her child support payments after she left one job

---

1. At oral argument John conceded that a remand was appropriate to determine whether he or Annie was entitled to a child support credit for buying health insurance for the children. We therefore remand for reconsideration of that issue.

from $838 to $427.16. John opposed, arguing that she failed to provide an adequate explanation for her change in jobs or documentation substantiating her claim that her decreased income warranted reduced support payments. Annie replied that she quit her St. Mary's job because it required too much travel, limiting her ability to be with the children when they visited.

Both parties testified before a special master in March 2006 after filing current, notarized Child Support Guidelines affidavits. Annie admitted that she had earned over $100,000 per year as a drug company representative in Alaska. She testified that she quit her St. Mary's job because it would have required her to travel locally and nationally between fifty-five percent and eighty percent of the time,[2] interfering with her ability to see the children. She stated that she expected her income from her new job to increase as she gained more experience and that her position afforded her the opportunity to earn promotions and raises. Finally, she testified that she was studying for a master's degree in business administration, but that she was probably two years away from getting the degree.

After the hearing, John moved to re-open the evidence because he claimed Annie perjured herself by testifying that she did not have a master's degree in education. He argued that her education had a direct bearing on her income-producing potential. The court granted John's motion, set another hearing for June 2006, and ordered Annie to file a financial declaration and documentation supporting her claim that she traveled eighty percent of the time while working for St. Mary's.

Annie claimed that documentation substantiating her assertion that she traveled eighty percent of the time was unavailable. She explained that St. Mary's had all of her travel records and tickets, that she did not keep any records of her own, and that St. Mary's tracked only her mileage, not her travel time. Annie's financial declaration showed that she

had $507,000 in assets including $82,000 in cash or cash accounts, $50,000 in stocks and bonds, and $270,000 in a retirement or pension fund.

At the June 2006 hearing conducted by the master, Annie acknowledged that she had a master's degree in education. She also admitted that she was not actually working towards a master's degree in business administration, but towards a "certificate in executive management." She stated that she would not get a master's degree because the classes were not for credit.

The master filed his report and his recommended rulings in July 2006. He found that Annie failed to substantiate her testimony about how much she traveled and that her March 2006 testimony contained conflicting evidence on that issue. He also found that she intentionally misled the court about her master's degree in education and that it was "difficult to accept her explanations." The master recommended that the superior court (1) deny Annie's modification motion because he found that she was unreasonably underemployed, and (2) award John fifty percent of his reasonable actual attorney's fees pertaining to the support modification motion: thirty percent because John was the prevailing party and an additional twenty percent of his fees because Annie engaged in vexatious and bad faith conduct. The superior court adopted the master's recommendations and denied Annie's request for reconsideration.

Annie appeals.

## III. DISCUSSION

### A. Annie's Motion To Modify Child Support

#### 1. The burden of proof was properly on Annie.

■ Annie argues that the master incorrectly imposed the burden of proof on her to prove she was not unreasonably underemployed. She asserts that the burden of showing a prima facie case of unreasonable

---

**2.** Annie variously testified that she traveled for St. Mary's fifty-five percent, fifty-five to eighty percent, fifty-five to sixty percent, and eighty percent of the time. She explained in an affidavit that she traveled eighty percent of the time. She defined "travel" as any time she left the St. Mary's campus for work.

underemployment should have rested with John. Annie claims that John failed to meet his prima facie burden because the only evidence of unreasonable underemployment he presented was testimony he elicited from Annie about her work history, education, and why she changed jobs. She posits that an initial showing of voluntary and unreasonable underemployment "should require more."

■ We rule de novo in determining how the law applies to undisputed facts.[3] Annie relies on a footnote in *Beaudoin v. Beaudoin* in which we stated that the court should assume that the obligor's earnings "accurately reflect reasonable efforts to maintain employment at earning capacity" when an obligor moves the court to modify his or her child support payments.[4] We noted that the court should "depart from this assumption only to the extent [the custodial parent] makes out a prima facie showing of voluntary and unreasonable underemployment."[5]

*Beaudoin* does not define a prima facie case of voluntary and unreasonable underemployment.[6] We held there that the father made out a prima facie case of unreasonable underemployment simply by showing that the mother opted not to seek gainful employment even though she shared only one-third of the total responsibility for the children's physical custody.[7]

In accord with what we said in *Beaudoin*, John presented more than adequate evidence to make out a prima facie case of voluntary and unreasonable underemployment. Annie concedes that she voluntarily left her job at St. Mary's. John therefore only had to show that it was unreasonable for her to change jobs. We conclude that John met his prima facie burden by showing that Annie voluntarily left St. Mary's to take a job paying

approximately half what she earned before. John's prima facie case is only bolstered by evidence that Annie's reduced income may be temporary, that her work history and qualifications indicate she could be making substantially more money, and that she had significant liquid assets at her disposal from which to satisfy her child support obligation.

Annie also contends that the master improperly put the burden on her to show that she traveled eighty percent of the time while working for St. Mary's, and to show that she sought, but could not find, a better paying job or a job that enabled her to use her master's degree in education. But all the evidence concerning the reasonableness of Annie's employment change was either in her control or far more available to her given that she no longer resides in Alaska; the relevant evidence would have been available to her through her own records or exclusively available to her through her employer's records. Because John met his initial burden, Annie was obliged to present evidence to rebut his prima facie case. Annie failed to do so. Once the primary custodian has made out a prima facie case of voluntary and unreasonable underemployment or unemployment the burden of persuasion shifts to the obligor to rebut that claim. The master did not err in requiring Annie to present rebuttal evidence to show that she was not unreasonably underemployed.[8]

### 2. The master did not apply the wrong legal standard or make inadequate findings in concluding that Annie was unreasonably underemployed.

■ Annie argues that the master did not consider the totality of the circumstances or

---

3. *Rusenstrom v. Rusenstrom*, 981 P.2d 558, 560 (Alaska 1999) (applying de novo review to denial of motion to modify child support).

4. *Beaudoin v. Beaudoin*, 24 P.3d 523, 531 n. 26 (Alaska 2001).

5. *Id.*

6. It was unnecessary in *Beaudoin* to elaborate on what was needed to make out a prima facie case because we concluded that the father in that case established a prima facie case. *Id.* at 530.

7. *Id.* at 529–30.

8. At oral argument before us, Annie argued that it would be appropriate to remand so that she may have the opportunity to offer rebuttal evidence. The superior court presented her with the chance to rebut John's prima facie case when it ordered her to provide evidence to support her extensive travel claims. Her failure to do so then forecloses a second opportunity.

make adequate findings to support his conclusion that she was unreasonably underemployed. The master found Annie was voluntarily and unreasonably underemployed in light of her past employment, income history, and educational background. He also found that Annie "ha[d] not proven that it was necessary for her to quit [her] St. Mary's job" because she had not substantiated the assertion that she traveled between fifty-five and eighty percent of the time. Given that John had custody of the children for most of the year, the master found that it was unreasonable for Annie to leave her St. Mary's job to take an approximately forty-five percent pay cut at IPA.[9] He therefore recommended that the superior court deny Annie's motion.

We independently review whether the trial court has applied the correct legal standard in determining a child support obligation.[10] We review child support modifications for abuse of discretion.[11] We will find an abuse of discretion if "we are left with the definite and firm conviction on the whole record that a mistake has been made."[12] The trial court's determination of an obligor's imputed income is a factual finding that we review for clear error.[13]

The trial court may use an obligor's potential income when calculating a child support award if the court finds the obligor is voluntarily and unreasonably un-

employed or underemployed.[14] It is appropriate to impute income to an obligor if a parent's current situation and earnings reflect a(1) voluntary and (2) unreasonable decision to earn less than the parent is capable of earning.[15]

Annie admits that she voluntarily left her job at St. Mary's College, where she earned $52,000 per year. We therefore must decide only whether the trial court abused its discretion in deciding that it was unreasonable for Annie to take a job that paid half as much. The court must consider the "totality of the circumstances" in deciding whether an obligor is unreasonably underemployed.[16] These include such factors as whether the obligor's reduced income is temporary,[17] whether the change is "the result of economic factors or of purely personal choices,"[18] the children's needs, and the parents' needs and financial abilities.[19]

Because the master's findings encompass the totality of the relevant circumstances, we conclude that it was not error to impute income based on them. The master's findings reflect that he considered the parties' custody arrangement, as well as Annie's work history, prior income, qualifications, education, and reasons for leaving her job. These are relevant factors in determining whether an obligor is currently unreasonably

---

9. The master also properly considered Annie's credibility in determining that her travel obligations did not justify leaving that position. It is the trier of fact's function to make credibility determinations and to weigh conflicting evidence. *Maloney v. Maloney*, 969 P.2d 1148, 1150 (Alaska 1998).

10. *Beaudoin*, 24 P.3d at 526.

11. *Byers v. Ovitt*, 133 P.3d 676, 680 (Alaska 2006).

12. *Id.*

13. *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998); *see also Maloney*, 969 P.2d at 1150.

14. Alaska R. Civ. P. 90.3(a)(4). Civil Rule 90.3(h)(1) permits a superior court to modify a child support award if the movant shows "a material change of circumstances" that affects the movant's ability to pay has occurred. A material change of circumstances is presumed if

the support is "more than 15 percent greater or less than the outstanding support order." Annie met this burden when she showed that her monthly payments would be reduced from $838 to $427.16 based on her 2005 income. This is an approximately fifty-percent difference.

15. Alaska R. Civ. P. 90.3(a)(4).

16. Alaska R. Civ. P. 90.3 cmt. III.C (directing courts to consider "the totality of the circumstances in deciding whether to impute income").

17. *Patch v. Patch*, 760 P.2d 526, 530 (Alaska 1988).

18. *Nunley v. State, Dep't of Rev.*, 99 P.3d 7, 11 (Alaska 2004) (internal quotations omitted); Alaska R. Civ. P. 90.3 cmt. X.A.

19. *Curley v. Curley*, 588 P.2d 289, 292 (Alaska 1979); *see also* Alaska R. Civ. P. 90.3 cmt. X.A.

underemployed.[20] Although the master did not make findings on several issues potentially relevant to the totality of the circumstances, such as the temporary nature of her reduced income or that she had substantial assets from which to satisfy her obligation in the meantime, we are not left with the definite and firm conviction that the superior court erred. Our independent review of the record supports the conclusion that Annie was voluntarily and unreasonably underemployed, and that it was therefore appropriate to impute income to her. The superior court did not abuse its discretion when it denied Annie's motion to reduce her child support payments.

 Finally, it was not clearly erroneous for the court to impute income of $52,000 to Annie. Potential income will be based on the parent's work history, qualifications, and job opportunities.[21] Given Annie's extensive sales experience and savings, it was not error to impute income to Annie at the salary she recently earned at St. Mary's.

### B. Attorney's Fees

Annie also argues that John's attorney's fees award should be reversed, both because "he should not have prevailed on the motion to modify" and because he "materially misled" the court about whether he had paid for the children's health insurance and about his income. Her first reason is unavailing, given our conclusion that the superior court did not err in denying Annie's motion to modify. And her second reason is not adequately briefed.[22] We therefore affirm the attorney's fees award.

### IV. CONCLUSION

We AFFIRM the court's denial of Annie's motion to modify child support payments and the court's award of attorney's fees to John. Given John's concession at oral argument that the health insurance credit issue was erroneously resolved, we REVERSE the denial of Annie's request for a health insurance credit and REMAND for a determination of which party is entitled to a child support credit for buying health insurance for the children.

---

**20.** *See Beaudoin,* 24 P.3d at 525 (remanding when father made out prima facie case of mother's unreasonable unemployment based on fact that she refused to seek gainful employment because she wanted to be "available for the children at all times" even though she had been employed in past and no longer had primary custody of children).

**21.** Alaska R. Civ. P. 90.3(a)(4).

**22.** *Braun v. Alaska Commercial Fishing & Agric. Bank,* 816 P.2d 140, 145 (Alaska 1991). We note also that "[a]ttention to the issue in a reply brief does not resuscitate it." *Id.*