NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOSEPH MEEHAN, | ) | |
| | ) | Supreme Court No. S-16164 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-11888 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| LAURA GREFFENIUS, | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1627 – April 26, 2017 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Joe P. Josephson, Josephson Law Offices, LLC, Anchorage, for Appellant. Danée Pontious, Law Offices of Dattan Scott Dattan, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.     INTRODUCTION

An ex-husband challenges two superior court rulings relating to his divorce. He argues that the court erred by characterizing and valuing his post-retirement health benefits when dividing the marital estate and by failing to impute income to his ex-wife when calculating child support. We affirm the ruling on his post-retirement health benefits, but we remand on the ruling whether to impute income to his ex-wife.

---

[*]     Entered under Alaska Appellate Rule 214.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Joseph Meehan and Laura Greffenius married in July 1990.  When they separated in July 2011 they had one minor child.

Joseph works for the State of Alaska and is eligible to receive post-retirement health benefits at age 60.  Laura worked for the federal government for over 16 years but would need to be re-employed by and work another 5 years for the federal government to receive any post-retirement health benefits.  Her last federal job — working half time as a wildlife biologist — ended in May 2011.  Despite applying for jobs in the public and private sectors Laura has not held a steady full- or part-time job other than as a substitute teacher since leaving her federal job.  Laura attributes this to a tough job market; Joseph contends she has unrealistic salary expectations.

In early 2012 Laura was diagnosed with Stage IV follicular non-Hodgkin's lymphoma, and she will require future treatment at uncertain intervals — typically every two to three years — becoming more frequent as the cancer progresses.  Laura has cited fatigue — which could be attributed to her disease — as an obstacle to working full time.

### B.    Proceedings

Laura filed for legal separation in December 2012; Joseph counterclaimed for divorce.  The superior court held its first day of trial in February 2014 and later issued a decision resolving custody, dividing the majority of the parties' property, and determining that a divorce was appropriate instead of a legal separation.  The superior court left two issues unresolved.

First, the court stayed the divorce decree until Joseph's health benefits could be valued, directing the parties "to work together and provide a status report . . . relating to the value of [Joseph's] health insurance coverage as a marital asset for the purpose of division of the marital estate."  The court later appointed Susan Spyker "as

a neutral expert to value the parties' health insurance coverage as a marital asset for the purposes of division of the marital estate."

Second, the court ordered the parties to file additional "financial documentation so child support may be calculated," stating that if Joseph "believes income should be imputed to [Laura] because she is voluntarily underemployed he must fully brief that issue." The parties' additional documentation about imputing income to Laura included information regarding an approximately $250,000 inheritance Laura received from her father in 2012, which had increased in value.[1]

After a second day of trial in June 2015 the court issued a written decision and later entered findings of fact and conclusions of law and a divorce decree. Relying on Spyker's expert report the court valued the marital portion of Joseph's post-retirement health benefits at $78,700. The court declined to impute income to Laura, stating only that "[h]aving reviewed the evidence presented the court finds [Joseph] has not met his burden to show that [Laura] is voluntarily unemployed or underemployed."

Joseph appeals.

## III.  STANDARD OF REVIEW

"There are three basic steps in the equitable division of marital assets: (1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably."[2]  "[T]he characterization of

---

[1]     *See* Alaska R. Civ. P. 90.3 cmt. III.A ("The principal amount of one-time gifts and inheritances should not be considered as income, but interest from the principal amount should be considered as income . . . .").

[2]     *Beals v. Beals*, 303 P.3d 453, 458 (Alaska 2013) (first citing *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991); then citing *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983)).

property as separate or marital may involve both legal and factual questions."[3] "Underlying factual findings as to the parties' intent, actions, and contributions to the marital estate are factual questions."[4] Valuation of assets is also "a factual determination."[5] We review findings of fact "for clear error, but whether the trial court applied the correct legal rule in exercising its discretion is a question of law that we review de novo using our independent judgment."[6]

"We independently review whether the trial court has applied the correct legal standard in determining a child support obligation."[7]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Characterizing And Valuing A Portion Of Joseph's Post-Retirement Health Benefits As A Marital Asset.

Joseph argues that the superior court erred in both characterizing and valuing a portion of his post-retirement medical benefits. He asks that we overturn *Hansen v. Hansen*[8] and no longer treat "a spouse's post-retirement health care benefit as

---

[3]    *Id.* at 459 (quoting *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006)) (first citing *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994); then citing *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988)).

[4]    *Id.* (first citing *Odom*, 141 P.3d at 330; then citing *Doyle*, 815 P.2d at 368).

[5]    *Id.* (first citing *Doyle*, 815 P.2d at 368; then citing *Rodriguez v. Rodriguez*, 908 P.2d 1007, 1012 n.6 (Alaska 1995)).

[6]    *Id.* (quoting *Hanson v. Hanson*, 125 P.3d 299, 304 (Alaska 2005)) (first citing *Odom*, 141 P.3d at 330; then citing *Doyle*, 815 P.2d at 368).

[7]    *Sawicki v. Haxby*, 186 P.3d 546, 550 (Alaska 2008) (citing *Beaudoin v. Beaudoin*, 24 P.3d 523, 526 (Alaska 2001)).

[8]    119 P.3d 1005, 1015 (Alaska 2005) ("Health insurance benefits earned
(continued...)

an asset for purposes of property division" because of access to low-cost health care coverage under the federal Affordable Care Act. He also argues that Spyker's $78,700 valuation was erroneous.

We conclude that the superior court did not err by characterizing a portion of Joseph's post-retirement health benefits as marital property. Joseph argues that *Hansen* should be reconsidered because of the "inherent difficulties in attempting to calculate the value of" post-retirement health benefits,[9] the cost of valuing such benefits, and an alleged "universal access to health coverage" under the federal Affordable Care Act. But these arguments do not address whether the asset is marital property,[10] and the difficulty in and cost associated with valuing the asset does not make it any less a part of the marital estate.[11] Because Joseph has not made a credible argument that *Hansen* was wrongly decided, we decline to further consider overturning it, and we reaffirm the general rule that "benefits . . . earned during the marriage . . . are marital property."[12]

We also hold that the superior court did not err by accepting Spyker's

---

**8**      (...continued)
during the marriage are a marital asset of the insured spouse." (citing *Kinnard v. Kinnard*, 43 P.3d 150, 156 (Alaska 2002))).

**9**      *Id.* at 1016.

**10**      *See Beals*, 303 P.3d at 460 ("Generally, 'all assets acquired by the parties during their marriage are marital property' except for gifts and inheritances." (quoting *Johns v. Johns*, 945 P.2d 1222, 1225 (Alaska 1997))).

**11**      *Hansen*, 119 P.3d at 1015 (citing *Kinnard*, 43 P.3d at 156); *see also id.* at 1016 (holding that "[d]espite the[] uncertainties [in calculating the value of health insurance benefits], sufficient evidence was presented" to value the asset).

**12**      *Engstrom v. Engstrom*, 350 P.3d 766, 770 (Alaska 2015) ("To the extent the benefits are earned during the marriage, they are marital property." (citing *Hansen*, 119 P.3d at 1015)).

valuation of Joseph's post-retirement health benefits. Joseph argues that when valuing the marital portion of his post-retirement health benefits Spyker erred by: (1) failing to consider the availability of low-cost health insurance under the Affordable Care Act; (2) assuming Joseph would retire at age 60 instead of 62; and (3) not valuing the "premium subsidy." Joseph's arguments have no merit. The alleged availability of other low-cost health insurance does not change the value of the benefits Joseph earned during the marriage, it was for the court to judge the credibility of Spkyer's assumptions,[13] and Spyker expressly calculated the present value of Joseph's post-retirement health benefits by using "[t]he premium subsidy provided by the State of Alaska."[14] We therefore conclude that the superior court did not err by accepting the valuation of Joseph's post-retirement health benefits reached by the parties' joint court-appointed expert.

B.     **We Remand For Further Proceedings Regarding Imputed Income.**

When declining to impute income to Laura the superior court stated: "Having reviewed the evidence presented the court finds [Joseph] has not met his burden to show that [Laura] is voluntarily unemployed or underemployed." The court provided no additional findings or analysis supporting its decision. Joseph argues that the superior court erred by placing the burden on him to prove that Laura was voluntarily and unreasonably unemployed or underemployed and asks that we remand for the court to recalculate child support with analysis supporting its decision.

---

[13]     *See Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) ("[T]he trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence." (quoting *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011))).

[14]     *See Hansen*, 119 P.3d at 1016 ("When valuing the retirement health insurance benefit, the superior court should look to the amount of the premium subsidy provided by the employer, rather than to . . . the cost of procuring comparable insurance." (citing BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6.26 (2d ed. Supp. 2004))).

In *Sawicki v. Haxby* we restated when income may be imputed for calculating a parent's child support obligation: "Once [a custodial parent] has made out a prima facie case of voluntary and unreasonable underemployment or unemployment the burden of persuasion shifts to the obligor to rebut that claim."[15] We also explained in *Sawicki* what facts are sufficient to make a prima facie case for shifting the burden to the other parent.[16] We held that if a non-custodial parent "concedes that she voluntarily left her job," the custodial parent "only ha[s] to show that it was unreasonable for her to change jobs."[17] The mere fact that the non-custodial parent took "a job paying approximately half what she earned before" was enough to make a prima facie case for unreasonableness, and the case was "only bolstered by evidence that [the non-custodial parent's] reduced income may be temporary, that her work history and qualifications indicate she could be making substantially more money, and that she had significant liquid assets at her disposal."[18]

Here Joseph "presented more than adequate evidence to make out a prima facie case of voluntary and unreasonable underemployment."[19] The record shows that Laura voluntarily left a full-time job for a temporary half-time position and has independent wealth through her recent inheritance. We therefore conclude that Joseph made a prima facie case for imputing income to Laura. Because Joseph made a prima

---

[15]     186 P.3d 546, 549 (Alaska 2008); *see also Beaudoin v. Beaudoin*, 24 P.3d 523, 529-30 (Alaska 2001) (holding that mother who had shared physical custody could still have income imputed to her).

[16]     *See Sawicki*, 186 P.3d at 549.

[17]     *Id.*

[18]     *Id.*

[19]     *Id.*

facie case "the burden of persuasion shift[ed] to" Laura to show that she was not voluntarily and unreasonably unemployed or underemployed.[20] But the superior court did not place the burden on Laura, instead stating that Joseph "has not met *his* burden to show that [Laura] is voluntarily unemployed or underemployed." (Emphasis added.) We conclude that the court's application of the law was erroneous, and we reverse and remand for the court to determine whether to impute income to Laura.[21]

The superior court may in its discretion open the matter for additional evidence, but because the "court has a duty to enter findings adequate for rational appellate review when it sets a child support obligation,"[22] we direct the "court to enter sufficiently detailed findings of fact" on remand.[23] We note that the "court shall consider the totality of the circumstances in deciding whether to impute income."[24] And we also

---

[20] *Id.*

[21] Laura argues that even if the superior court erred its decision should be affirmed as harmless, essentially asking us to make the necessary finding of fact under the proper burden of proof and then to exercise our own discretion to determine whether imputing income is warranted. This would be inappropriate. *See Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 449 n.5 (Alaska 2012) (refusing to affirm a decision on alternative grounds "normally . . . resolved by discretionary powers traditionally reserved for trial courts" concerning "disputable issues of fact" (quoting *Vaska v. State*, 135 P.3d 1011, 1019 (Alaska 2006))).

[22] *O'Connell v. Christenson*, 75 P.3d 1037, 1040 (Alaska 2003) (first citing *Berkbigler v. Berkbigler*, 921 P.2d 628, 631 (Alaska 1996); then citing *Waggoner v. Foster*, 904 P.2d 1234, 1235 (Alaska 1995); and then citing *Adrian v. Adrian*, 838 P.2d 808, 811 (Alaska 1992)).

[23] *Id.* (quoting *Nass v. Seaton*, 904 P.2d 412, 419 (Alaska 1995)).

[24] Alaska R. Civ. P. 90.3 cmt. III.C; *see also Sawicki*, 186 P.3d at 550 ("The court must consider the 'totality of the circumstances' in deciding whether an obligor is unreasonably underemployed." (quoting Alaska R. Civ. P. 90.3 cmt. III.C)); *Beaudoin*
(continued...)

note that when considering the totality of the circumstances, although "[t]he principal amount of one-time gifts and inheritances should not be considered as income, . . . interest from the principal amount should be considered as income."[25]

## V.    CONCLUSION

We AFFIRM the superior court's ruling on Joseph's post-retirement health benefits.  We REMAND for the court to determine whether to impute income to Laura.

---

**24**    (...continued)
*v. Beaudoin*, 24 P.3d 523, 528 (Alaska 2001) ("[T]he rule and our case law specifically require courts to consider the 'totality of the circumstances' to decide whether income should be imputed." (quoting Alaska R. Civ. P. 90.3 cmt. III.C) (citing *Pugil v. Cogar*, 811 P.2d 1062, 1066 (Alaska 1991))).

**25**    Alaska R. Civ. P. 90.3 cmt. III.A; *see also Robinson v. Robinson*, 961 P.2d 1000, 1003 n.3 (Alaska 1998) ("If on remand the superior court determines that this property was indeed inherited, only the interest from its sale . . . would qualify as income under the guidelines of Rule 90.3." (first citing *Nass*, 904 P.2d at 416; then citing Alaska R. Civ. P. 90.3 cmt. III.A)).