*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JUSTIN A. FARR, | ) | |
| | ) | Supreme Court No. S-16629 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-16-05573 CI |
| v. | ) | |
| | ) | O P I N I O N |
| BRANDI LITTLE, | ) | |
| | ) | No. 7225 – February 23, 2018 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: John C. Pharr, Law Offices of John C. Pharr, Anchorage, for Appellant. Notice of nonparticipation filed by Cameron K. Compton, Law Offices of Cameron K. Compton, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Carney, Justices. [Bolger, Justice, not participating.]

MAASSEN, Justice.

## I.     INTRODUCTION

Unmarried parents separated and asked the superior court for a custody and child support order. The father was receiving military disability payments but was otherwise unemployed. In calculating his child support liability, the superior court imputed income to him of $40,000 in addition to his military disability payments. The

court also apparently rejected the father's request to deduct business losses, including depreciation, incurred by his rental properties. The father appeals.

We conclude that several aspects of the superior court's findings of fact are not sufficiently explained for purposes of our review: (1) the basis of the imputed income figure; (2) the effect of employment on the father's disability payments; and (3) whether the father is entitled to deduct claimed business losses from his income. We therefore vacate the child support order and remand for the superior court's further consideration of these issues.

## II.    FACTS AND PROCEEDINGS

### A.    Custody

Justin Farr and Brandi Little, the parents of two children, separated in November 2015 following an alleged incident of domestic violence. In March 2016 Little moved for custody of both children, and there was another alleged incident of domestic violence a few weeks later. In November 2016 the custody case went to trial; the court ultimately concluded that the domestic violence presumption applied against Farr, and it therefore awarded physical and legal custody to Little.[1]

### B.    Child Support

In July 2016 Little filed a motion for child support. The parties disputed several distinct issues related to Farr's income that are relevant to this appeal: his earning capacity, his claimed loss of income from rental properties, and other deductions from his income.

The parties first disputed whether Farr could work at all. He had served in the Air Force for 16 years in a variety of capacities, including Special Operations and

---

[1]    Under AS 25.24.150(g) there is a rebuttable presumption that a parent with a history of perpetrating domestic violence should not have sole or joint legal or physical custody of a child.

Pararescue. He was medically separated from the Air Force in 2012 after injuring his back in an explosion near his convoy. The military considered him 80% disabled, and medical separation resulted in disability payments of $21,185.76 per year. According to the superior court's later findings, Farr "[did] not appear to have held a full-time job since his separation" from the Air Force.

Little disputed the extent of Farr's disability. In her motion for child support she asked the court to impute income to him because he was "working as a HVAC mechanic for free" and there was "no reason that he should be unemployed." Pointing to an average salary for an HVAC mechanic of $61,712, Little asserted that Farr's adjusted annual income including his military disability should be $70,134.88. Farr's opposition stressed that he was 80% disabled, making any unemployment involuntary. Apparently in response to Little's claim that he was working as an HVAC mechanic, Farr submitted an affidavit from the owner of a carpet-cleaning business attesting that he "[was] not an employee" and was not being paid for the work he was doing to help her keep the business afloat after her former husband "became unable to operate the business."

Based on the motion and opposition, the superior court issued an interim child support order requiring Farr to pay $466.70 total per month for the two children, including a health insurance adjustment. The court did not impute income to Farr, but it noted that its final support calculation could be "higher because of imputation or withheld income sources."

Little's trial brief did not reiterate the claim that Farr could be making money as an HVAC mechanic, but focused instead on his alleged "opportunity to make $225,000 a year" as a defense contractor and his "many job offers"; on the basis of these allegations, Little asked the court to impute income at the $120,000 maximum for child support purposes. Farr's trial brief addressed child support only cursorily, saying that

the issue had already been briefed and that he would "present testimony from his parents about his payment of child support to his parents" for a child of his from an earlier relationship.

At the trial, Little did not introduce any evidence that Farr had previously worked or could work as an HVAC mechanic or provide the estimated salary information. Instead, Little focused her cross-examination of Farr on custody issues, Farr's six-figure job offers, his rental income, and whether he paid child support to his parents for their care of Farr's older child.[2]

Farr testified that after his injury he had received offers to work for Boeing for $150,000, $225,000, and $255,000 per year. He also testified that he would try to get a job but that he did not know whether he could actually get one given his back injury and history of concussions. The court later summarized Farr's testimony as admitting that "he was employable and capable of earning a six figure income." But the court saw "a bit of a catch 22": while it "believe[d] that Mr. Farr is capable of making money above his current disability pay," it was "less certain" that Farr could transfer his military skills to high-paying civilian employment. The court nevertheless found that "Farr has the ability to have an after-tax income for child support purposes of $40,000 annually plus his military disability."

Farr also raised the issue of losses he claimed to have incurred on two rental properties he owned in Wasilla. He had not included these on the DR-305 affidavit submitted for child support purposes. But he had claimed significant deductions for the properties on his tax returns from 2013 to 2015, including depreciation and other

---

[2]     Farr testified that he paid over $10,000 annually for the support of two other children. The court ultimately disregarded these alleged payments because they were not made pursuant to a court order and one of the two other children was over 18 and not enrolled in a secondary school.

expenses, ultimately amounting to a loss of approximately $40,000 each year. The superior court appeared skeptical of these losses at trial: "Is he really losing money on his apartments or is he losing money because of depreciation and things of that nature?" Ultimately the court made no findings about the Wasilla properties and did not separately itemize any business losses in its calculation of income. Its final child support order found Farr's total adjusted annual income to be $62,207.76, which required Farr to pay $1,646.37 per month, including a health insurance adjustment.

On appeal, Farr challenges the court's imputation of income, blaming Little for the lack of evidentiary support for the $40,000 figure; he claims that Little "did not address child support other than to state that Mr. Farr was not paying any and that she was not the source of his financial strain." He asserts that her failure to present evidence precluded the court from imputing income to him. He also challenges the court's failure to incorporate into its income calculation his claimed self-employment losses from the rental properties.

Little did not participate in this appeal.

## III. STANDARD OF REVIEW

"We review an award of child support for abuse of discretion."[3] But "[w]e review the superior court's factual findings regarding a party's income for purposes of calculating child support for clear error."[4] "The trial court's determination of an obligor's imputed income is a factual finding that we review for clear error."[5] "Whether

---

[3]    *Limeres v. Limeres*, 320 P.3d 291, 295 (Alaska 2014) (citing *Swaney v. Granger*, 297 P.3d 132, 136 (Alaska 2013)).

[4]    *Id.* (citing *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003)).

[5]    *Sawicki v. Haxby*, 186 P.3d 546, 550 (Alaska 2008) (citing *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998)).

the superior court applied the correct legal standard to its child support determination is a question of law that we review de novo."[6]

## IV. DISCUSSION

### A. The Imputation Of $40,000 In Income To Farr Requires Reconsideration On Remand.

We have explained that under Alaska Civil Rule 90.3(a)(4), "[i]t is appropriate to impute income to an obligor if a parent's current situation and earnings reflect a (1) voluntary and (2) unreasonable decision to earn less than the parent is capable of earning."[7] "The court must consider the 'totality of the circumstances' in deciding whether an obligor is unreasonably underemployed,"[8] including "such factors as whether the obligor's reduced income is temporary, whether the change is 'the result of economic factors or of purely personal choices,' the children's needs, and the parents' needs and financial abilities."[9] The parent with primary physical custody has the burden to make a prima facie case that the obligor parent is voluntarily and unreasonably under- or unemployed; after that initial burden is met, "the burden of persuasion shifts to the obligor to rebut that claim."[10]

---

[6]     *Limeres*, 320 P.3d at 295 (citing *Koller*, 71 P.3d at 804).

[7]     *Sawicki*, 186 P.3d at 550.

[8]     *Id.* (quoting Alaska R. Civ. P. 90.3 cmt. III.C).

[9]     *Id.* (footnotes omitted) (quoting *Nunley v. State, Dep't of Revenue*, 99 P.3d 7, 11 (Alaska 2004)).

[10]     *Id.* at 549.

### 1. Little made a prima facie case that Farr was voluntarily and unreasonably unemployed.

Farr argues that it was inappropriate to impute income to him based on voluntary and unreasonable unemployment. But the superior court's implied conclusion — that Little made a prima facie case that Farr failed to rebut[11] — is consistent with our precedent.[12]

In *Sawicki v. Haxby*, we affirmed a superior court's determination that a father carried his preliminary burden to make a prima facie case when the mother "concede[d] that she voluntarily left her job" and the father showed she did so "to take a job paying approximately half what she earned before."[13] The prima facie case was "bolstered by evidence that [the mother's] reduced income may be temporary, that her work history and qualifications indicate she could be making substantially more money, and that she had significant liquid assets at her disposal from which to satisfy her child support obligation."[14]

In another case, *Beaudoin v. Beaudoin*, we remanded for an evidentiary hearing after concluding that the father made a prima facie case by "offer[ing] evidence

---

[11] Although the superior court never clearly delineated the parties' respective burdens, it did state that "there has been no significant evidence that would approach the burden of proof to refute a high cap limit on [Farr's] child support," implying that Little met her initial burden and the burden had shifted to Farr.

[12] We review de novo whether the primary custodian made a prima facie case. *See Sawicki*, 186 P.3d at 549; *Beaudoin v. Beaudoin*, 24 P.3d 523, 530 (Alaska 2001) ("conclu[ding] that [the father] made a prima facie showing of voluntary underemployment and that his claim [seeking imputed income] could not be rejected as a matter of law").

[13] 186 P.3d at 549.

[14] *Id.*

indicating that [the mother] had previously held a job, that she was capable of obtaining gainful employment, and that she was actually working without pay."[15] The mother gave up employment to be a "full-time mom" but remained unemployed after her custody changed from full-time custody of three children to half-time custody of two.[16]

In Little's motion for child support she asserted that Farr was "working for free based on his own admission," apparently referring to his explanation at the trial setting conference, the day before, that he was "donat[ing] [his] time" to his neighbor's carpet-cleaning business to help her avoid losing it.[17] This was evidence that he was capable of working, at least part time, but was not doing so. And the superior court found after trial that Farr had testified "he was employable and capable of earning a six figure income." Although the court had doubts about this testimony, it was sufficient to satisfy Little's burden of making a prima facie case that Farr was voluntarily and unreasonably unemployed, shifting the burden of persuasion to him.

### 2. The superior court's findings are insufficient to support its decision to impute income of $40,000 to Farr.

It was Farr's burden to rebut Little's prima facie case[18] and "to establish his earning capacity."[19] An obligor parent's potential income should be calculated "based

---

[15] 24 P.3d at 526-27.

[16] *Id.*

[17] Farr was adamant that he was only a "stay at home dad" and did not receive any income aside from $1,700 per month in disability.

[18] *Sawicki*, 186 P.3d at 549.

[19] *Kowalski v. Kowalski*, 806 P.2d 1368, 1372 (Alaska 1991).

on the parent's work history, qualifications, and job opportunities."[20] "In determining a party's earning capacity for purposes of [Alaska Civil Rule 90.3], the trial court has the discretion to choose the best indicator of future earning capacity based on the evidence before it."[21] "This discretion is particularly broad where the reason for [an] incomplete record is the parent's own unresponsiveness."[22] "The ultimate goal of a support determination 'is to arrive at an income figure reflective of economic reality.' "[23]

Here, the superior court questioned whether Farr could "make the kind of money that he boast[ed] that he [could] make with many of the skills that he could or could not talk about that he acquired during his military career." The court noted that Farr had never had that kind of income in the past and that the skills he learned in the military "do not necessarily relate to a high paying civilian job." The court nevertheless found that "Farr has the ability to have an after-tax income for child support purposes of $40,000 annually plus his military disability."

We conclude that this finding was either clearly erroneous or an abuse of discretion, depending on its basis. The superior court may have made a factual finding that Farr could make $40,000 from the opportunities available to him; alternatively, it could have made a discretionary decision to impute the number based on the lack of

---

[20]     *Sawicki*, 186 P.3d at 551 (citing Alaska R. Civ. P. 90.3(a)(4)).

[21]     *McDonald v. Trihub*, 173 P.3d 416, 427 (Alaska 2007) (citing *Coghill v. Coghill*, 836 P.2d 921, 926 (Alaska 1992)).

[22]     *Rodvik v. Rodvik*, 151 P.3d 338, 350 (Alaska 2006) (quoting *Byers v. Ovitt*, 133 P.3d 676, 682 (Alaska 2006)).

[23]     *McDonald*, 173 P.3d at 427 (quoting *Adrian v. Adrian*, 838 P.2d 808, 811 (Alaska 1992)).

specific evidence of something different.[24]  Either way, we do not find support in the record for the number the court selected or an explanation of how it was reached.  We therefore vacate the child support order and remand for further findings.

> **a.      If the $40,000 imputed income figure is based on the allegations of six-figure Boeing salaries or work as an HVAC mechanic, it is clear error.**

The $40,000 imputed income figure is clearly erroneous if its basis is either Farr's alleged six-figure job offers or Little's suggestion that Farr could do HVAC work.  First, Farr's testimony notwithstanding, there is insufficient evidence to support a finding that he could earn a six-figure income.  He testified that after his injuries he received three offers to work as a contractor for Boeing for annual salaries of $150,000 or more, based on Boeing's knowledge "through word of mouth" of Farr's qualifications as "a crash investigator where [he had] done just about everything" during his time in the Air Force.  Farr also testified, however, that he was unsure whether he could get a job with Boeing currently "because of all the hits" he had taken while in the military, including "nine concussions."  Although he testified that he "absolutely" wanted to work, he was not sure Boeing would still want him after seeing the results of a required physical examination.

The court appeared to give little credit to Farr's testimony about lucrative job offers, characterizing it as a boast.  And the court several times noted its concerns with Farr's mental stability and his reliance on and overuse of prescription drugs.  Farr testified that he had not "had a [post-traumatic stress disorder] episode in years" and that he does not "have mental problems," but the court's doubts about the alleged job offers

---

²⁴      The superior court is entitled to estimate income if more specific information is unavailable and has discretion to select the best evidence on which to rely.  *See id.* (citing *Coghill*, 836 P.2d at 926).

from Boeing, combined with questions about Farr's ability to work at anything other than a moderate-income job, made the six-figure offers an inadequate evidentiary basis for any imputed income figure.

Second, the record lacks evidence that Farr could earn $60,000 as an HVAC mechanic. Little made this suggestion by affidavit in her motion for child support but did not refer to it again until closing arguments at trial. At that time her attorney referred to "the average salary for an HVAC mechanic" and asked that the court impute that amount at "a minimum."

But no evidence had been adduced at trial about Farr's possible employment as an HVAC mechanic. Before trial he had said he was working for free at the carpet-cleaning business; also before trial he submitted an affidavit from the owner of that business, stating that Farr was "not an employee" and was not being paid for his help in "keep[ing] the business operational" after her "former husband became unable to operate the business." In fact, as the court acknowledged, there was no evidence that Farr did any income-generating work at all; he even hired someone else to do the maintenance on his rental properties.[25]

We conclude that neither the possibility of HVAC work nor the alleged job offers from Boeing supported an imputed income figure of $40,000. As a finding of fact, it is clearly erroneous.

---

[25] The superior court found that Farr "[did] not appear to be working on anything other than his fourplexes, but the number of hours of what he is actually remodeling is less clear to the court." Farr testified that his injuries prevented him from doing that work himself.

### b.    If the $40,000 imputed income figure is an estimate, then it is an abuse of discretion.

If the superior court was not relying on either the Boeing offers or the HVAC salary for the $40,000 figure, it may have made an estimate based on the lack of better evidence in the record, which it had discretion to do.[26] The superior court said it did "not doubt that [Farr] is capable of working and making a moderate income," and that "[t]he $40,000.00 presumed income is a portion of what he swore he is capable of making." This language implies that the court chose the $40,000 figure more as a discretionary response to a lack of solid evidence than as a finding of fact. If so, however, we conclude that it was a abuse of discretion.

"Although 'courts have broad discretion to impute income based on realistic estimates of earning potential,' the court's imputed income determination must be based on the four factors listed in [Civil Rule 90.3]: the parent's work history, qualifications, job opportunities, and potential income from non-income or low-income producing assets."[27] "A trial court is required to make specific findings to support a

---

[26]    *Beaudoin v. Beaudoin*, 24 P.3d 523, 530 (Alaska 2001) (Rule 90.3(a) "give[s] courts broad discretion to impute income based on realistic estimates of earning potential."); *see, e.g., Byers v. Ovitt*, 133 P.3d 676, 683 (Alaska 2006) (affirming order imputing income based on party's estimated expenses when party was uncooperative and gave contradictory testimony); *Benson v. Benson*, 977 P.2d 88, 91-95 (Alaska 1999) (affirming order imputing income based on party's bank records when testimony was non-responsive and contradictory) .

[27]    *Horne v. Touhakis*, 356 P.3d 280, 282 (Alaska 2015) (quoting *Reilly v. Northrop*, 314 P.3d 1206, 1217 (Alaska 2013)); *see, e.g., Barlow v. Thompson*, 221 P.3d 998, 1003 (Alaska 2009); *O'Connell v. Christenson*, 75 P.3d 1037, 1041 (Alaska 2003); *Koller v. Reft*, 71 P.3d 800, 805 (Alaska 2003).

determination of adjusted income under Civil Rule 90.3."[28]  Because "[f]indings are meaningless unless the calculations upon which they are based are disclosed,"[29] we have "required that the 'actual numbers . . . used to calculate the child support award' be set forth in findings supporting child support awards."[30]  Here the court failed to provide an explanation for the figure it chose as Farr's imputed income.

In a number of cases we have remanded for further findings when the superior court's income calculations were not sufficiently explained.[31]  In *Bailey v. Bailey* we remanded when "there [wa]s no way to tell how the superior court arrived at [the father's] prospective child support obligation" and "the [c]ourt did not state the source of its calculations."[32]  In *Wright v. Gregorio* we remanded when the judge had "failed to make explicit findings as to the income of each party and how she calculated

---

[28]     *Gallant v. Gallant*, 882 P.2d 1252, 1255 (Alaska 1994) (citing *Wright v. Gregorio*, 855 P.2d 772, 773 (Alaska 1993), *opinion modified on reh'g* (Sept. 30, 1994); *Terry v. Terry*, 851 P.2d 837, 837-38 (Alaska 1993)); *see also Adrian v. Adrian*, 838 P.2d 808, 811 (Alaska 1992) ("A trial court's findings must be sufficiently detailed and explicit to give an appellate court a clear understanding of the ground on which the trial court reached its decision." (quoting *Sloan v. Jefferson*, 758 P.2d 81, 86 (Alaska 1988))).

[29]     *Terry*, 851 P.2d at 838.

[30]     *Carstens v. Carstens*, 867 P.2d 805, 809 (Alaska 1994) (alteration in original) (quoting *Terry*, 851 P.2d at 838).

[31]     *See Hammer v. Hammer*, 991 P.2d 195, 201 (Alaska 1999) (remanding for recalculation of child support when "the superior court did not acknowledge the option of income averaging in its findings nor did it explain its reasons for relying on [the father's] most recent year of earnings"); *Gallant*, 882 P.2d at 1255 ("The trial court in this case simply set the adjusted income without explaining its calculation of gross income or the amounts and types of deductions.  We remand for specific findings on the parties' adjusted income.").

[32]     63 P.3d 259, 264 (Alaska 2003).

it" because "[a]dequate findings of fact on such matters are essential" to enable "a reviewing court [to] clearly understand the grounds on which the lower court reached its decision."[33] On the other hand, when we have affirmed the superior court's estimate of income, it is because there was evidence of the likely wage in a field in which the parent had actual experience.[34]

In this case, there is no evidence of Farr's competence as an HVAC mechanic, the number of hours he could work in that field, or his ability to acquire and maintain a high-paying civilian job with Boeing. Nor is there evidence of any other paying work on which to base an estimated $40,000 in imputed income. The court found that Farr was capable of making a "moderate income" but did not explain how it defined "moderate." In a December 2016 supplemental order, the court clarified that "[t]he $40,000.00 presumed income is a portion of what [Farr] is capable of making." But that clarification does not state what Farr *could* be making, or why only a portion of that is a reasonable estimate of his income for child support purposes. We therefore remand to give the superior court an opportunity to further clarify its decision. The court may take

---

[33]     855 P.2d at 773; *see also Carstens*, 867 P.2d at 809 (remanding when superior court stated that mother would "earn interest" on cash payout resulting from her divorce but failed to estimate interest and concluded without further explanation that she owed $200 per month); *Adrian*, 838 P.2d at 811-12 (remanding when the superior court based its child support calculation on a finding of the "parties' relative financial positions" without "provid[ing] the raw numbers necessary for a Civil Rule 90.3 calculation").

[34]     *See McDonald v. Trihub*, 173 P.3d 416, 426 (Alaska 2007) ("Evidence established that the mean wage for automotive service technicians and mechanics in Anchorage was $20.51 per hour" and that the father "owned and operated a business buying and selling used motor homes, that he worked as an automobile mechanic repairing and upgrading the motor homes for resale, and that as recently as 2004 he held a business license for 'auto repair and sales.' ").

any additional evidence it considers necessary to support an estimate of Farr's imputed income.

> ### c. On remand the superior court should also make findings on whether Farr could earn both wages and disability income.

Farr also challenges the court's conclusion that he may earn $40,000 in addition to his disability income; he claims that "he will lose his disability if he works a job earning after-tax $40,000." Farr did not raise this issue until about three weeks after trial, and at that point he failed to provide any support aside from his own affidavit, which stated simply, "If I work a job, I will lose my disability."[35] We nevertheless conclude that the issue should be addressed on remand.

Because disability pay is typically tied to an inability to work, Farr's claim has intuitive appeal. Black's Law Dictionary defines disability as "[a]n objectively measurable condition of impairment, physical or mental[;] . . . one that prevents a person from engaging in meaningful work."[36] As noted above, the superior court's findings highlighted its concerns about Farr's disability and his mental health.

But the military does not consider Farr to be totally disabled, so it is possible he could do some work without losing his disability pay. And the disability information Farr received from the Veterans' Administration indicated that he could receive assistance "to prepare for, obtain, and maintain suitable employment" without indicating that this might result in a loss of benefits. Without more information on the disability requirements, it is not clear whether Farr would be prevented from receiving

---

[35] Little's only response to Farr's claim was to state that "Farr will not lose his military disability if he works contrary to his claims." She provided no supporting evidence.

[36] *Disability*, BLACK'S LAW DICTIONARY (10th ed. 2014).

*any* disability income if he took a paying job. On remand, the superior court should determine whether Farr will lose his disability pay if he finds other employment; it is Farr's burden to demonstrate that his disability pay will not continue.[37]

**B.      Whether Farr's Claimed Rental Losses And Depreciation Offset His Income Should Also Be Reconsidered On Remand.**

After Farr submitted his child support affidavit, he asked that his overall income for child support purposes be reduced by his reported losses on the Wasilla fourplexes. The superior court's findings of fact and conclusions of law were silent about these claimed losses, and they were left out of the court's child support calculation worksheet. Farr argues that this was error. Because the superior court's findings do not explain whether the rental losses were considered and how they were applied, if at all, we remand this issue for clarification.

**1.      Rental income and related business expenses may be included in the imputed income calculation.**

The starting point for calculating income under Rule 90.3 — a "parent's total income from all sources" — includes income from self-employment, such as rental income.[38] The Rule 90.3 commentary defines self-employment income as "the gross receipts minus the ordinary and necessary expenses required to produce the income."[39] We have explained that "necessary expenses" may include straight-line depreciation for

---

[37]      *Cf. Sawicki v. Haxby*, 186 P.3d 546, 549 (Alaska 2008) (holding that if party makes showing that another party is unreasonably underemployed or unemployed, then burden shifts to other party to make showing that lack of employment is reasonable).

[38]      Alaska R. Civ. P. 90.3 cmt. III.A.

[39]      Alaska R. Civ. P. 90.3 cmt. III.B.

-16-                                                      **7225**

business real estate.[40]  But there is no hard and fast rule on whether "net losses from self-employment income must or must not be deducted from a parent's other sources of income."[41]  The court may exclude "business expenses determined by the court to be inappropriate."[42]  For example, "[t]he deduction is not available in the case of corporations which effectively serve as tax or income shelter devices."[43]

The court's exclusion of Farr's claimed business losses in this case may be supportable.  The court may have included rental income, with appropriate offsets, in its estimate of $40,000 in after-tax income.  It may have rejected Farr's claimed losses as an income shelter.  But without specific findings on the issue we cannot determine whether the superior court's treatment of it was an abuse of discretion.  We therefore remand for an explanation.

> **2.     Straight-line depreciation of Farr's rental properties may be an appropriate business expense.**

During trial the superior court voiced some skepticism about whether Farr could include depreciation as an expense of his rental business.  We have held, however, that although accelerated depreciation cannot be deducted, "straightline depreciation of

---

[40]     *Eagley v. Eagley*, 849 P.2d 777, 781 (Alaska 1993) ("[T]he superior court should allow, as ordinary and necessary business expenses, a deduction for straightline depreciation of the parent's business' real estate.").

[41]     *Faulkner v. Goldfuss*, No. S-13018, 2010 WL 1135745, at *6 (Alaska Mar. 24, 2010).

[42]     Alaska R. Civ. P. 90.3 cmt. III.B.

[43]     *Gallant v. Gallant*, 945 P.2d 795, 800 (Alaska 1997).

business equipment" — including real property[44] — may be deducted under Rule 90.3.[45] We explained:

> Depreciation is a means of reflecting on an annual basis the costs of capital equipment. Such costs are real and should not be disregarded unless it appears that equipment was acquired in order to avoid or reduce the obligor's child support obligation. Unless that is the case here, on remand, the court should allow a realistic deduction for depreciation.[46]

In the court's determination of Farr's income, thus, straight-line depreciation should have been allowed as a business expense unless the court determined that it was otherwise "inappropriate" under Rule 90.3.[47]

Farr asserts that to the "unschooled eye" his claimed depreciation is all "straight-line depreciation." But the amount of straight-line depreciation, which assumes a constant rate of decline in the value of an asset over a fixed period, should be the same from year to year.[48] Farr's depreciation calculations vary from year to year. Some

---

[44]     *See Eagley*, 849 P.2d at 781 ("[T]here is no rational reason for disallowing straightline depreciation of buildings, fixtures, and other improvements, yet allowing such depreciation costs for business equipment.").

[45]     *Id.* ("Although the committee commentary to Rule 90.3 states that there should be no deduction for accelerated depreciation, *see* Rule 90.3 cmt III.B., there is no similar suggestion with respect to straightline depreciation of business equipment." (quoting *Ogard v. Ogard*, 808 P.2d 815, 819 (Alaska 1991))).

[46]     *Ogard*, 808 P.2d at 819.

[47]     *See Eagley*, 849 P.2d at 782 ("[T]he relevant inquiry on remand of this case to the superior court will be whether Ronald's claimed depreciation of $54,285.00 contains any element of accelerated depreciation.").

[48]     *Straight-line depreciation method*, BLACK'S LAW DICTIONARY (10th ed.
(continued...)

variation could be explained by additional assets or "improvements"[49] being put into service in different years. But on remand the burden is on Farr to show that any depreciation for the improvements was calculated by the straight-line method,[50] regardless of the appearance to the "unschooled eye."

## V. CONCLUSION

We VACATE the superior court's child support order and REMAND for further consideration consistent with this opinion. We do not retain jurisdiction.

---

[48] (...continued)
2014) ("A depreciation method that writes off the cost or other basis of the asset by deducting the expected salvage value from the initial cost of the capital asset, and dividing the difference by the asset's estimated useful life."); INTERNAL REVENUE SERVICE, PUBLICATION 946: HOW TO DEPRECIATE PROPERTY 43-45 (2017), https://www.irs.gov/pub/irs-pdf/p946.pdf (example shows straight line method has constant value of depreciation each year); Obaidullah Jan, *Straight-line Method of Depreciation*, ACCOUNTINGEXPLAINED, http://accountingexplained.com/financial/non-current-assets/straight-line-depreciation (last visited Jan. 8, 2018).

[49] "Improvement means an addition to or partial replacement of property that is a betterment to the property, restores the property, or adapts it to a new or different use." INTERNAL REVENUE SERVICE, *supra* note 48 at 13.

[50] We note that Farr's 2013 tax documents indicate that he calculated depreciation for 10-year assets placed into service that year using the "200 DB" (or 200% declining balance) method, which is a form of accelerated depreciation that "[p]rovides a greater deduction during the earlier recovery years." INTERNAL REVENUE SERVICE, *supra* note 48, at 38. If Farr's total depreciation in subsequent years included depreciation for these improvements (calculated with the 200 DB method), his overall deduction may have included accelerated depreciation, which under Rule 90.3 may not be deducted from income for child support purposes.